Jo Anne JUGUM and Martin and Anne Jugum, Plaintiffs,

v.

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Defendant.

No. C86–211C.

United States District Court, W.D. Washington.

June 24, 1986.

Robert D. Duggan, David W. Soukup, Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz, Seattle, Wash., for plaintiffs.

William K. Black, David A. Felt, Mark Gabrellian, Federal Home Loan Bank Bd., Office of Gen. Counsel, Washington, D.C., Richard S. Twiss, Cheryl A. Smith, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant.

ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

COUGHENOUR, District Judge.

THIS MATTER comes before the Court on cross motions for summary judgment. Neither side has requested oral argument.

On August 30, 1985, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation (FSLIC) to be the receiver for Westside Federal Savings and Loan Association of Seattle, Washington (Westside). The plaintiffs in this action, Anne Jugum, Martin Jugum, and their daughter, Jo Anne Ju-

gum, held two accounts at Westside.[1] Account 0–01–01014201 contained $69,926.61; account D–01–90017335 contained $95,821.65. On the basis of Westside's records, the FSLIC determined that both of these accounts were jointly owned by the plaintiffs: the accounts listed all three plaintiffs as "joint tenants with right of survivorship," all of the plaintiffs had signed the signature cards for both accounts, and the terms of the account agreements permitted any of the plaintiffs to make withdrawals. Under 12 C.F.R. § 564.9(d) (1985), jointly owned accounts "owned by the same combination of individuals" must be aggregated before applying the $100,000 limit on deposit insurance contained in 12 U.S.C. § 1728(a). For this reason, the FSLIC determined that a total of $64,926.61 from the two accounts was uninsured, and so informed the plaintiffs on September 9, 1985.

The plaintiffs submitted a written request for reconsideration to the FSLIC on November 6, 1985. In their request, the plaintiffs contended that the accounts were actually single-owner accounts: account 0–01–01014201 was owned solely by Martin Jugum, and account D–01–90017335 was owned solely by Jo Anne Jugum. In support of their contentions, the plaintiffs stated that each had made all deposits into, and withdrawals from, his or her own account, that each had paid taxes only on the interest from his or her own account, and that the other plaintiffs had been added to the accounts so that they would have rights of survivorship in the accounts. The plaintiffs also asserted that they had relied on the representations of Westside employees that both accounts would be fully insured.

On November 27, 1985, the FSLIC denied the plaintiffs' request for reconsideration on the ground that it failed to meet the test of "substantiality" set forth in 12 C.F.R. § 564.1(d)(3) (1985).[2] The FSLIC noted that Westside's records established that the accounts were joint tenancies with rights of survivorship and that the FSLIC was not bound by the representations of employees of Westside. The FSLIC also denied the request because it failed to include citations to applicable statutes and regulations, as required by 12 C.F.R. § 564.1(d)(3)(iii)(*b*) (1985) (*amended* 1986). The FSLIC's denial of reconsideration exhausted the plaintiffs' administrative remedies. See 12 C.F.R. § 564.1(d)(3)(iv) (1985) (*amended* 1986).

This action was filed on February 18, 1986, to recover the uninsured amount of the plaintiffs' accounts. Jo Anne Jugum claims $37,722.08; the marital community of Martin and Anne Jugum claim $27,204.53. Both sides have moved for summary judgment.

## I

The plaintiffs' complaint is for enforcement of their claims for FSLIC deposit insurance. Under 12 U.S.C. § 1728(b), the FSLIC is required to pay holders of insured accounts of financial institutions in default. This Court has subject matter jurisdiction of the plaintiffs' claims by virtue of 12 U.S.C. § 1730(k)(1)(B) and 28 U.S.C. § 1331.

■ The FSLIC argues that this Court has no power to award the monetary relief that the plaintiffs seek. Rather, it argues, the plaintiffs' only basis for relief is under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Thus, the denial of the plaintiffs' request for payment of insurance would have to be upheld unless the Court could conclude that the FSLIC's findings and conclusions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" on the record before the FSLIC. *See* 5 U.S.C. § 706(2).

The FSLIC's argument appears to be that it is protected by sovereign immunity, and that Congress has waived its immunity only to the extent provided in the APA.

---

1. Jo Anne Jugum also held two accounts at Westside in her name alone. These accounts are not at issue in this action.

2. The requirement that the Director of the Insurance Division determine whether a request is "substantial" has since been deleted. See 12 C.F.R. § 564.1(d)(3) (1986).

*See* 5 U.S.C. §§ 702–703. Although it is true that the FSLIC is protected by sovereign immunity by virtue of its status as a federal agency, *see* 12 U.S.C. § 1725(c); *Federal Savings & Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1019 (7th Cir. 1969), the FSLIC's argument ignores several provisions of the National Housing Act, as amended, that permit the plaintiffs to bring this action to enforce their claim for payment of insurance. Moreover, such an action is not confined to judicial review of the FSLIC's refusal to pay insurance.

As a general matter, the FSLIC has the power to "sue and be sued . . . in any court of competent jurisdiction in the United States." 12 U.S.C. § 1725(c)(4). Since the FSLIC is in the insurance business, it may be assumed to have accepted the ordinary incidents of suits in that business. *North New York Savings Bank v. Federal Savings & Loan Insurance Corp.*, 515 F.2d 1355, 1364 (D.C.Cir.1975) (allowing claim for interest on funds held by the FSLIC). More specifically, 12 U.S.C. § 1728(b) requires the FSLIC to pay insurance on insured accounts and provides that the FSLIC may require a judicial determination of liability before paying insurance claims:

> In the event of a default by any insured institution, payment of each insured account . . . shall be made by the Corporation . . . *Provided,* That the Corporation, in its discretion, may require proof of claims to be filed before paying the insured accounts, and . . . may require the final determination of a court of competent jurisdiction before paying such claim.

(Emphasis in original.) In addition, 12 U.S.C. § 1728(c) provides:

> No action against the Corporation to enforce a claim for payment of insurance . . . shall be brought after the expiration of three years from the date of default unless, within such three-year period, . . . the claim for payment of insurance shall have been presented to the Corporation

and its validity denied, in which event the action may be brought within two years from the date of such denial.

These provisions clearly indicate that Congress intended to permit judicial actions to enforce claims against the FSLIC for payment of insurance.

Moreover, in an action for payment of insurance, Congress does not appear to have limited courts to reviewing the FSLIC's denial of insurance. Rather, in enacting 12 U.S.C. § 1728(b)–(c), Congress appears to have contemplated that a court would decide the merits of the action on its own record. A number of considerations favor this interpretation.

The first consideration is that subsections 1728(b) and (c) do not require exhaustion of administrative remedies before an action may be filed for payment of insurance. Under subsection 1728(b), the FSLIC has a duty to pay insurance "as soon as possible," though it may require a court to determine the validity of a claim with which it is not satisfied. No administrative procedure for determining the validity of claims is specified.[3] Subsection (c) tolls the running of the period within which actions for payment of insurance must be brought if a claim has been presented to the FSLIC; the implication is that an action for payment of insurance may be brought within three years of an institution's default without first presenting the claim to the FSLIC for payment. Exhaustion of administrative remedies may well be required as a matter of judicial policy, but since the statute does not even require presentation of a claim to the FSLIC, Congress could not have intended to limit courts to review under the APA of the FSLIC's denial of a claim.

A second consideration is that subsection 1728(c) uses the term "action" instead of "review" and provides for a three-year limit on bringing the action, rather than the more limited period of time commonly provided for seeking judicial review of administrative actions. Other provisions of the

---

**3.** This Court does not decide what effect, if any, subsequent amendments to the regulations might have on this analysis. *See, e.g.,* 12 C.F.R. § 564.1(d)(5) (1986) (effective with respect to claims for reconsideration filed after November 28, 1985).

Act use the word "review" or otherwise clearly indicate that an action of the Federal Home Loan Bank Board or the FSLIC is at issue, and the time for seeking judicial review is short. *See, e.g.,* 12 U.S.C. §§ 1464(d)(6)(A) (30 days); 1464(d)(7)(A) (explicit reference to APA); 1725(j)(4) (30 days); 1730(f)(2) (10 days); 1730(j)(1) (30 days; explicit reference to APA); 1730(k)(3)(D) (10 days); 1730a(k) (30 days). Compare also the provision for judicial relief under the Social Security Act: "Any individual, *after any final decision* of the Secretary ..., may obtain a *review* of such decision by a civil action commenced within *sixty days....*" 42 U.S.C. § 405(g) (emphasis added). In contrast, original actions against the Commodity Credit Corporation and for war-risk insurance contain much longer statutes of limitation comparable to those for civil actions between private parties. *See* 15 U.S.C. § 714b(c) (6 years); 46 U.S.C. § 1292 (2 years).

Finally, the limited administrative procedures for relief available to FSLIC claimants suggest that Congress intended that those claimants would have access to an independent judicial determination of their entitlement to insurance. Section 1728 does not require the FSLIC to conduct a hearing on claims for insurance or to follow any other procedure in evaluating such claims. The procedures that have been established by the FSLIC are minimal. *See* 12 C.F.R. § 564.1 (1985).[4] If a claim for payment of insurance is denied based on the records of the savings and loan association, a claimant was required to seek a reconsideration of the denial by filing a written request with the FSLIC, including supporting documentation. *See* 12 C.F.R. § 564.1(d)(3) (1985). The claimant was given no opportunity to respond to the FSLIC's denial of reconsideration or denial of insurance payments upon reconsideration. *See* 12 C.F.R. § 564.1(d)(3)(iv)–(4)(i) (1985). Since the original denial of a claim was conclusory (*see* Defendant's Cross Motion for Summary Judgment, Exhibit H), the claimant was without an effective op-

portunity to respond to the FSLIC's grounds for denial. *Cf. National Organization for Women, Washington, D.C. Chapter v. Social Security Administration,* 736 F.2d 727, 739 (D.C.Cir.1984) (Robinson, C.J., concurring) ("fundamental proposition of administrative law that interested parties must have an effective chance to respond to crucial facts."). Where, as here (*see* discussion *infra*), the intent of the parties with respect to ownership of accounts may be crucial to an insurance determination, the procedures provided by the FSLIC appear even more inadequate. For these reasons, the Court concludes that it is not limited in this action to a review under the APA of the FSLIC's denial of insurance payments to the plaintiffs.

## II

The FSLIC's motion for summary judgment rests primarily on its argument that Westside's account records are conclusive on the question of account ownership. Since there is nothing in the account records to suggest that all three plaintiffs do not own the accounts, the FSLIC maintains that it is entitled to treat the accounts as joint accounts subject to aggregation before application of the $100,000 limit on insurance contained in 12 U.S.C.A. § 1728(a) (West Supp.1986). The plaintiffs contend that *actual* ownership of the accounts determines the proper classification of the accounts, that Washington law governs the issue of ownership, and that under Washington law the accounts are not owned jointly, but owned individually by the marital community of Martin and Anne Jugum, and by Jo Anne Jugum. Since accounts owned singly by different individuals cannot be aggregated, and since neither account exceeds the insurance limit, if the Court accepted plaintiffs' contention both accounts would be fully insured.

The FSLIC is required to insure the accounts of each "member" of an insured institution up to $100,000 per member. 12

4. By contrast, the amended procedures provide for more specific and thorough mechanisms for

claims adjudication. *Compare* 12 C.F.R. § 564.1 (1985) with 12 C.F.R. § 564.1 (1986).

U.S.C. § 1728(a). An "insured member" is defined as an "individual, partnership, association, or corporation which holds an insured account." 12 U.S.C. § 1724(b). The FSLIC is authorized to further define this term and the "extent of the insurance coverage resulting therefrom." 12 U.S.C.A. § 1728(a) (West Supp.1986). The plaintiffs have not challenged the validity of the FSLIC's regulations for determining insurance coverage.

The plaintiffs' contention that actual ownership must be considered when accounts are aggregated is based on the use of the term "owner" to define the categories of accounts eligible for payment of insurance. Thus, 12 C.F.R. § 564.3(a) (1985) provides: "Funds *owned by an individual* ... and invested in one or more accounts in his own name shall be insured up to $100,000 in the aggregate." (Emphasis added.) Similarly, 12 C.F.R. § 564.9(a) (1985) provides: "Accounts *owned jointly* ... shall be insured separately from accounts *individually owned* by the co-owners." (Emphasis added.) In addition, the plaintiffs point to language in the appendix to Part 564:

> The examples, *as well as the rules which they interpret,* are predicated upon the assumption that invested funds are actually owned in the manner indicated on the institution's records. If available evidence shows that ownership is *different from that on the institution's records,* the Federal Savings and Loan Insurance Corporation *may* pay claims for insured accounts on the basis of actual rather than ostensible ownership.

12 C.F.R. § 426–27 (1985) (appendix to Part 564) (emphasis added).

In response to the plaintiffs' interpretation, the FSLIC makes a number of arguments, primarily based on 12 C.F.R. §§ 564.2(b), 564.9(b) (1985). Subsection 564.2(b) provides, in relevant part:

> (1) The account records of the insured institution shall be conclusive as to the existence of any *relationship* pursuant to which the funds in the account are invested and on which a claim for insur-

ance coverage is founded. *Examples would be trustee, agent, custodian or executor.* No claim for insurance based on such a relationship will be recognized in the absence of its disclosure on such records.

> (2) If the account records of an insured institution disclose the existence of a relationship which may provide the basis for additional insurance, the details of the relationship and the interests of other parties in the account must be ascertainable either from the records of the association or the records of the account holder maintained in good faith and in the regular course of business.

(Emphasis added.) The FSLIC argues that this section establishes that the records of the financial institution are conclusive on the issue of ownership, and that the language in the appendix to Part 564 quoted by the plaintiffs merely reiterates that, if there is an ambiguity in the records, business records may be used to clarify the ambiguity. Section 564.2(b), however, refers only to relationships, not ownership. The examples provided all refer to relationships in which the named account holder invests the funds of another pursuant to that relationship. No such relationship is involved in this case. Rather, the named account holder has invested his or her funds in his or her own name and has added individuals to the account to create rights of survivorship. The purpose of this section is to avoid the difficult problems of proof created when a party with no ostensible interest in an account, for example, a beneficiary of a trust, claims ownership in that account. In this case, the parties asserting ownership are named in the account records. Moreover, the FSLIC's effort to harmonize this language with the language in the appendix is contradicted by the plain meaning of the appendix. Section 564.-2(b)(2) is limited to situations in which the account records disclose an ambiguity as to a relationship between the ostensible owner and other claimant. The appendix is not limited to such ambiguities and refers to ownership, not relationships.

The FSLIC also argues that, under 12 C.F.R. § 564.9(b) (1985), a joint account is conclusively deemed to exist for purposes of insurance of accounts if (1) each co-owner has signed the account signature card and (2) each co-owner possesses withdrawal rights. This argument is not persuasive. The section is directed to "co-owners." The essence of the plaintiffs' argument is that they are not co-owners. This subsection does not resolve the question whether account records are to be conclusive as to ownership. Moreover, the language of this subsection is clearly directed at establishing necessary, not sufficient, conditions: "A joint account shall be deemed to exist for purpose [sic] of insurance of accounts, *only if* each co-owner has personally executed an account signature card and possesses withdrawal rights." (Emphasis added.)

Finally, the FSLIC argues that the language quoted from the appendix is of no force because the appendix is not a regulation, and that, even if the appendix were of some force, it makes consideration of actual ownership discretionary with the FSLIC. The appendix, of course, is not part of the regulations, but it is an official gloss upon the regulations, and is published as such in the *Federal Register*. It may therefore clarify the regulations' use of the term "owner." As to the FSLIC's discretion to consider actual ownership, the appendix does not indicate under what circumstances that discretion is to be exercised. The regulations suggest, however, when the exercise of such discretion is *not* appropriate, and, by negative implication, when the exercise of such discretion is appropriate. Actual ownership is not to be considered when the account records do not disclose the existence of a relationship upon which a claim for insurance is founded. 12 C.F.R. § 564.2(b) (1985). In other circumstances, then, it can be inferred that a determination based on actual ownership is appropriate if the claimant presents sufficient evidence to establish actual ownership in the absence of any indication of such ownership in the account records.

In general, an agency's interpretation of its own rules is entitled to considerable deference. *McCoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir.1982). Nevertheless, an agency's interpretation must be rejected when it is plainly erroneous or inconsistent with its regulations. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Salehpour v. INS*, 761 F.2d 1442, 1445 (9th Cir.1985). The FSLIC's position in this case is contrary to the plain meaning of its regulations. The regulations base insurance determinations on the ownership of accounts. Subsection 564.2(b) creates a limited presumption of ownership that does not embrace this case. The FSLIC's position would nullify the limited language of that section and would be contrary to explanatory language in the appendix to Part 564. Moreover, the Court has not been presented with evidence that the position advanced by the FSLIC in this case is the official position of the agency. "Interpretations" put forward by counsel for the FSLIC are not entitled to deference. *See Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1177 n. 3 (2d Cir.1977); *Massy v. United States*, 214 F.2d 935, 940 (8th Cir.1954). The FSLIC certainly assumed that the account records in this case were conclusive as to ownership, but it did not address this issue in its denial of reconsideration, even though the issue was raised by the plaintiffs in their request for reconsideration. Nor has counsel for the FSLIC presented the Court with evidence of prior FSLIC insurance determinations that are regularly made available and that would be relevant to this issue.

### III

The plaintiffs base their claim of single ownership on Washington law. The FSLIC contends that Washington law is inapplicable because 12 C.F.R. § 564.9 (1985) provides a complete definition of a joint account. This argument ignores the issue of ownership, which is part of the definition of a joint account. Section 564.2(a) of the regulations provides that "[i]nsofar as rules of local law enter into [insurance]

determinations, the law of the jurisdiction in which the insured institution's principal office is located shall govern." Since "ownership" is not defined in Part 564, the law of Washington governs this question to the extent that actual ownership is relevant to the FSLIC's determinations. *See Mahoney v. Federal Savings & Loan Insurance Corp.*, 393 F.2d 156, 158–61 (7th Cir.1968) (applying Illinois law to decide ownership of savings and loan accounts), *cert. denied*, 393 U.S. 837, 89 S.Ct. 112, 21 L.Ed.2d 107 (1968).

 Under Washington law, the plaintiffs' assertions, if proven, could establish individual ownership. In *In re Estate of Oney*, 31 Wash.App. 325, 641 P.2d 725 (1982), the court held that intent governed the creation of a joint tenancy in a savings and loan account. *Id.* at 328–29, 641 P.2d at 727. The Court relied on Wash.Rev. Code § 33.20.030, which was repealed in 1982, but Wash.Rev.Code § 30.22.090(2) provides: "Funds on deposit in a joint account ... with right of survivorship belong to the depositors in proportion to the net funds owned by each depositor on deposit in the account...." Thus, the holding in *Oney* retains its validity.

The defendant's assertion that *Oney* and other cases cited by the plaintiffs are relevant only in determining whether funds in an account are an inheritance or gift is incorrect. Wash.Rev.Code § 30.22.120 does provide that a financial institution may rely on the form of the account in discharging its obligations to the owners of the account, but only if it does not have actual knowledge of the true ownership of the account. Moreover, Wash.Rev.Code § 30.22.130 provides that the protection afforded to financial institutions by Wash. Rev.Code § 30.22.120 and other provisions has no bearing on actual rights of ownership. Since the plaintiffs have asserted that they did not intend to create jointly owned accounts, they could prove that the accounts were not jointly owned under Washington law.

## IV

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Clipper Exxpress v. Rocky Mountain Tariff Bureau, Inc.*, 690 F.2d 1240, 1250 (9th Cir.1982). Since the actual ownership of the accounts in this case is disputed, summary judgment is not appropriate.

Accordingly, the plaintiffs' and defendant's motions for summary judgment are DENIED.

The Clerk of this Court is directed to send uncertified copies of this Order to all counsel of record.