**TOCCI CORPORATION, Plaintiff,**

v.

**YANKEE BANK FOR FINANCE AND SAVINGS, FSB (now the FDIC in its Capacity as Receiver), Defendant.**

**Civ. A. No. 87–3121–K.**

United States District Court, D. Massachusetts.

May 25, 1988.

Anthony E. Battelle, Robert V. Lizza, Sherburne, Powers & Needham, Boston, Mass., for plaintiffs.

Cornelius J. Moynihan, Jr., Robert A. Whitney, Peabody & Brown, Boston, Mass., for Yankee Bank For Finance And Savings.

## MEMORANDUM AND ORDER

KEETON, District Judge.

In November 1986, plaintiff Tocci Corporation ("Tocci") brought suit in Middlesex Superior Court against Yankee Bank for Finance and Savings ("Yankee Bank") in order to enforce a mechanic's lien under Mass.Gen. Laws c. 254. In October 1987, the Federal Home Loan Bank Board ("FHLBB" or "the Board") determined Yankee Bank to be insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. On December 31, 1987, the FDIC removed this action to federal court pursuant to 12 U.S.C. § 1819.

Pending before the court is the motion of the FDIC to dismiss, or, in the alternative, to stay (Docket Nos. 9, 11). Tocci opposed this motion (Docket Nos. 12, 14), and the FDIC submitted a reply brief in response (Docket No. 16). I conclude that the FDIC has not shown cause for dismissal or a stay at this time; therefore, defendant's motion is denied.

### I.

Before considering to the substance of the motion to dismiss, I turn to several preliminary or peripheral points. First, Tocci has moved to substitute the FDIC as defendant (Docket No. 7). No opposition having been filed, this motion is allowed.

Second, the FDIC requested a stay of this action in state court, which request was opposed by Tocci (Docket No. 6) and was still pending at the time the FDIC removed to federal court. Examination of the relevant submissions reveals that the grounds advanced in state court in favor of a stay are identical to the grounds advanced in this court in favor of dismissal or, in the alternative, a stay. Because I conclude, for the reasons explained below, that the grounds stated do not justify such relief, the FDIC's request for a stay, first presented in state court, is denied.

Finally, Tocci has moved for an order compelling discovery (Docket No. 4). The FDIC opposed this motion on grounds that discovery was inappropriate during the pendency of its own motion to stay (Docket No. 8). Without deciding whether the grounds stated by the FDIC would be sufficient in any circumstances, I conclude that the basis for the FDIC's opposition disappears with the resolution in this Memorandum of its motion for a stay. Therefore, the motion to compel discovery is allowed.

### II.

The FDIC has moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h), alleging lack of subject matter jurisdiction. All creditor claims against the FDIC in its capacity as a receiver, it is argued, are within the exclusive jurisdiction of the FDIC and the FHLBB, and jurisdiction exists in Article III courts only to the extent provided for judicial review in the Administrative Procedure Act, 5 U.S.C. §§ 701–06.

The FDIC's argument is of relatively recent vintage. Until the 1980's, neither the Federal Savings and Loan Insurance Corporation ("FSLIC") nor the FDIC ever argued that it possessed authority to adjudicate claims. Nevertheless, the position advanced by the FDIC in this case has already gained significant precedential support. *See, e.g., North Mississippi Savings and Loan Assoc. v. Hudspeth,* 756 F.2d 1096 (5th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *York Bank and Trust Co. v. FSLIC,* 663 F.Supp. 1100 (M.D.Pa.1987); *FSLIC v. Oldenburg,* 658 F.Supp. 609 (D.Utah 1987) (all concluding that a creditor's claim

against the FSLIC in its capacity as receiver of a failed financial institution must be adjudicated on the administrative track subject only to judicial review at the track's conclusion). In fact, since *Hudspeth* was decided, only two courts have decided that the district courts retain subject matter jurisdiction over claims against the FSLIC or FDIC in its capacity as a receiver. *See Morrison–Knudsen Co., Inc. v. CHG International, Inc.,* 811 F.2d 1209 (9th Cir. 1987); *FSLIC v. Provo Excelsior, Ltd.,* 664 F.Supp. 1405 (D.Utah 1987).

The issue presented is one of first impression in the First Circuit and the District of Massachusetts. Despite the weight of precedent to the contrary, analysis of the manifest meaning of the relevant statutory framework leads me to conclude that Congress has not authorized the FDIC to adjudicate claims in its capacity as a receiver. For this reason, defendant's motion to dismiss for lack of subject matter jurisdiction must be denied.

### A.

Defendant FDIC, and the Fifth Circuit in *Hudspeth,* rely primarily on two provisions of federal banking law. The first, 12 U.S. C. § 1464(d)(6)(C), states that "no court may take any action for or toward the removal of any ... receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a ... receiver." The second relevant statutory provision is 12 U.S.C. § 1729(d). It states:

> In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board. . . .

In a nutshell, the argument in favor of dismissal is that the FDIC has the power to adjudicate claims against itself in its capacity as a receiver, and court adjudication,

insofar as it restrains the exercise of that power, is barred by section 1464(d)(6)(C).

The first objection to the FDIC's argument is that both of the statutory provisions it points to, on their face, apply to the FSLIC rather than the FDIC. As to section 1464(d)(6)(C), the answer to the objection is found in 12 U.S.C. § 1464(d)(6)(D), which states that section 1464 applies equally to the FDIC where it serves as a receiver for a failed federal savings bank such as Yankee Bank. No easy answer is available, however, as to section 1729(d). Defendant points a second time to section 1464(d)(6)(D), arguing that it supports the broader proposition that the FSLIC and the FDIC possess the same powers where either serves as a receiver appointed by the FHLBB.

The issue presented is a serious one. Despite significant precedent for the holding that the FSLIC has exclusive adjudicatory power, only one case to date has arrived at the same conclusion with respect to the FDIC. *See Rivers v. Yankee Bank for Finance and Savings, FSB,* 690 F.Supp. 989 (S.D.Ala.1988). In its one page Memorandum Opinion, the court in *Rivers* did not address the distinction between the FDIC and FSLIC. Because, however, I conclude that neither the FSLIC nor the FDIC has exclusive adjudicatory power, it is unnecessary for me to decide whether statutory provisions (and other legal precedent) relied on by defendant, which on their face apply only to the FSLIC, apply also to the FDIC. For purposes of this Memorandum, I assume that the FDIC possesses at least as much power in its capacity as a receiver appointed by the FHLBB as the FSLIC does when so appointed.

The second objection to the FDIC's argument attacks one of its major premises. If judicial review, which the FDIC admits is appropriate and which itself may delay ultimate liquidation for years, does not restrain or affect the exercise of a receiver's power, then why does initial adjudication by a court of a creditor's claims do so? *Morrison–Knudsen,* 811 F.2d at 1216. One answer, of course, is that initial adjudi-

cation is more "intrusive" than review. The section relied upon by the FDIC, however, does not turn upon degrees of intrusiveness; rather, it forbids "any action" that restrains the powers of a receiver. Courts relying on section 1464(d)(6)(C) have read this prohibition broadly to mean that the section prohibits court actions that in any way restrain the ultimate function of the receiver to accomplish the distribution of assets. *Cf. Hudspeth,* 756 F.2d at 1102 (noting that "resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets").

The third objection is the most decisive. It is apparent that the text of section 1464(d)(6)(C) alone does not declare both (a) that the FDIC in its capacity as receiver shall have power to adjudicate claims of creditors and depositors, and (b) that the federal courts (and state courts from which actions may be removed) are divested of subject matter jurisdiction over claims against the FDIC in its capacity as receiver. Section 1464 does not express any grant of any power; instead, it simply prohibits courts from restraining whatever power the receiver might already have from some other source. *Morrison–Knudsen,* 811 F.2d at 1217. Thus, "the critical issue is whether the [FDIC], as a receiver, is empowered to adjudicate the claims of creditors and depositors." *York Bank & Trust Co. v. FSLIC,* 663 F.Supp. 1100, 1103 (M.D.Pa.1987).

At common law, receivers have no power to adjudicate claims. A common law receiver "merely becomes an assignee of the insolvent, having exactly the same rights that he had." *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297 n. 2 (10th Cir. 1986). Indeed, in its own submissions the FDIC described its status by stating: "As Yankee Bank's receiver, the FDIC now functions as Defendant in this action and Tocci's claims stand against the Receivership's assets." Memorandum in Support of Motion to Dismiss at 3. In short, court adjudication of a creditor's claims against a common law receiver would not restrain the receiver's authorized powers. *Cf. Mor-*

*ris v. Jones,* 329 U.S. 545, 549, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1947) (stating that "the establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have"). Therefore, the burden falls on the defendant in this case to point to manifested congressional intent that receivers appointed pursuant to the statutory scheme have the power to adjudicate where their common law counterparts do not. The sole source defendant cites as a manifestation of such an intent is section 1729(d).

Section 1729(d) grants receivers of insured institutions the power "to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against institutions, and to do all other things that may be necessary in connection therewith. . . ." These powers, however, are distinguishable from the power to adjudicate. Authority to "settle, compromise, or release claims" is entirely consistent with the common law powers of a receiver, who steps into the shoes of the debtor. Indeed, as the *Morrison–Knudsen* court noted, the power to "settle, compromise, or release claims" is not only distinguishable from the power to adjudicate but to some degree incompatible with it. Settlement and compromise are the powers to agree upon the disposition of a claim; only with the consent of the adverse party do these powers prevent the adverse party from taking a dispute to court. *Morrison–Knudsen,* 811 F.2d at 1219. Therefore, the statutory scheme cited by the FDIC does not affirmatively support the conclusion that Congress has granted it the power to adjudicate claims against itself as receiver.

In addition, the wider context of the statutory framework negates whatever inference might otherwise be drawn from section 1729(d) about the power of a receiver to adjudicate creditor's claims. First, the reasonable implication of 12 U.S.C. § 1728(b), (c) is that denial of a claim by an insured depositor can be litigated in district

court without any administrative exhaustion requirement. *See Jugum v. FSLIC*, 637 F.Supp. 1045, 1047 (W.D. Wash.1986). "To assume that the [FDIC] must litigate *depositors'* claims, with which it has great expertise, but may adjudicate *creditors'* claims against the institution in receivership, as to which its expertise is much less, is not a rational interpretation of the statutory scheme." *Morrison–Knudsen*, 811 F.2d at 1220 (emphasis in original).

Second, the conclusion that section 1729(d) is a grant of adjudicatory power is inconsistent with recognition of the dual roles of the FSLIC and the FDIC and the powers Congress has granted attendant to each. The FSLIC and the FDIC regulate associations within their domain. In this capacity, each has power to adjudicate, and where either is authorized to exercise this power, Congress has provided detailed procedural safeguards. *See* 12 U.S.C. § 1464(d)(2)–(5) (for FSLIC); 12 U.S.C. § 1818 (for FDIC). In contrast, the sections applicable to the powers of the FSLIC and the FDIC in their capacity as receivers contain no such detailed procedural scheme. *See* 12 U.S.C. § 1464(d)(6) (for FSLIC); 12 U.S.C. § 1821(c), (d), 1822 (for FDIC). The most reasonable conclusion to draw from this striking contrast is that Congress did not provide for the power of the FSLIC or the FDIC to adjudicate in their capacity as receivers.

### B.

In general, it is inappropriate for a court to search beyond the language of the statute for the meaning manifested, where the meaning of the words is clear. *Cf. United States v. Rutherford*, 442 U.S. 544, 551–52, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979) (Marshall, J., writing for a unanimous court) (instructing that "[i]f a legislative purpose is expressed in 'plain and unambiguous language, ... the ... duty of the courts is to give it effect according to its terms.' ... Exceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the enactment as a whole"). The present circumstances, however, justify ex-

amination of legislative history and the FHLBB's regulations implementing its enabling statute. The split among the circuits that have addressed the question presented attests to the fact that the meaning manifested by the words of the statute in dispute has not been understood to be clear.

In *Hudspeth*, the Fifth Circuit reasoned that the legislative history manifests a congressional concern with quick, decisive liquidation of failing institutions unencumbered by judicial or regulatory authorities outside of the FHLBB. *Hudspeth*, 756 F.2d at 1102. In support, *Hudspeth* quotes Senate Report No. 1263 to the effect that the "FSLIC's authority 'in carrying out its receivership responsibilities ... would be subject only to the regulation of the Federal Home Loan Bank Board....'" *Id.* at 1101. The portion quoted, however, may be interpreted quite differently, when examined in the full context.

The Senate Report cited by the *Hudspeth* court accompanied legislation designed to allow the Board to appoint the FSLIC as receiver for state chartered savings and loans in addition to federally charted institutions because delays in some states were costing the FSLIC considerable money. S.Rep. No. 1263, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2530, 2535–37. In its entirety, the portion of the Report cited in *Hudspeth* reads as follows:

> In carrying out its receivership responsibilities, the committee expects the FSLIC to give due consideration to the interest of all of the claimants upon the association, including general creditors, uninsured depositors, and association stockholders. The authority of the FSLIC in this regard would be subject only to the regulation of the Federal Home Loan Bank Board and not to that of any State authority, administrative or judicial, which may previously have had regulatory authority with respect to the institution.

*Id.*, 1968 U.S.Code Cong. & Admin.News at 2539. In context, it is clear that Congress

was addressing only the relationship between state and federal regulatory authority over the Board, not the relationship between federal regulatory and federal judicial authority.

For the foregoing reason, I conclude that this legislative history does not support a conclusion that the statutory framework provides the FSLIC or the FDIC with exclusive adjudicatory power.

### C.

Next, it is argued that regulations promulgated by the Board pursuant to 12 U.S.C. § 1464(d)(11) provide for an administrative procedure for adjudicating claims against the assets of an institution in receivership, and that an agency's regulations interpreting its enabling act are entitled to deference, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). I reject this argument for two reasons. First, the regulations referred to do not define an administrative procedure for adjudication. Second, even if the regulations did provide for adjudication, such a choice would not be reasonable within the meaning of *Chevron. Id.* at 845, 104 S.Ct. at 2783.

FHLBB regulations covering the FDIC in its capacity as receiver for a failed federal savings bank provide:

> The receiver shall approve any seasonably filed claim proved to its satisfaction. The receiver may wholly or partly disallow any claim of security, preference, or priority not so proved and shall notify the claimant of the disallowance and the reason therefor. Mailing notice ... to the claimant's last address ... shall be sufficient notice. Unless, within 30 days after the notice is mailed, the claimant files a written request for payment regardless of the disallowance, disallowance shall be final, except as the Board may otherwise determine.

12 C.F.R. § 549.5–1(b)(2). Once again, however, the powers conferred by the regulations are completely consistent with the powers of a traditional receiver at common law. Paying or refusing to pay is not adjudication. The "[FDIC] is no more an adjudicator under this regulation than is an insurance company authorized to 'disallow' any claim not proved to its satisfaction and required to notify claimants thereof." *Morrison–Knudsen,* 811 F.2d at 1218. Moreover, 12 C.F.R. § 549.5–1(b)(2) is also applicable to the claims of insured *depositors. See* 12 C.F.R. § 549.5–1(c)(1). As stated above at pages 8–9, however, a denial of an insured's claim can be litigated in court without any exhaustion requirement.

An additional, and independent, reason for rejecting the FDIC's argument from regulations is that, although some deference is due an agency's interpretation of its enabling statute, only regulations reasonable in light of the manifest meaning expressed by Congress should be upheld. For the reasons stated above, I conclude that the text of the statute and its legislative history manifest no delegation of adjudicatory power to the FDIC in its capacity as receiver. If the FHLBB's regulations implementing this statute were to provide differently, and I have determined that they do not, that choice would not be a reasonable one and the regulations would be invalid. *See Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783.

### D.

The conclusions stated above are reinforced by the observation that allowing any person or entity to adjudicate claims against itself is an extraordinary arrangement because of the inherent conflict of interest implicit in such a dual role. An interpretation of a statute that attributes to Congress a manifestation of intent to create powers in an agency so likely to lead to impairment of impartiality in adjudication is inherently suspect. Such a proposed interpretation should not be accepted in the absence of a clear manifestation of a choice by Congress to create this extraordinary power, which exists in the legal system only in rare circumstances and because of identifiable overriding concerns about other compelling interests. *Cf. Morrison–Knudsen,* 811 F.2d at 1219 n. 3, 1219–20, 1221–22.

### E.

For all of the foregoing reasons, I conclude that the FDIC does not possess exclusive power to adjudicate claims against the assets of failed federal savings banks. The claim of plaintiff in this case is not "switched to the administrative track," and defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### III.

The FDIC argues in the alternative for this court to stay its hand or dismiss the case as a matter of discretion under the doctrine of exhaustion of administrative remedies. This doctrine does not limit the jurisdiction of the federal courts, but furnishes a district court with a method of exercising comity with respect to administrative agencies and promoting efficient use of judicial resources. *Morrison–Knudsen*, 811 F.2d at 1223. In exercising its discretion under the doctrine of exhaustion of administrative remedies, a court is to consider harm from interruption of the administrative process, the desirability of the agency's building a factual record and exercising its own expertise, and the degree to which resources can be conserved consistently with protection of the rights of parties before the court. *Cf. id.; McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969). I conclude that a stay would be inappropriate in the circumstances presented.

It is apparent at the outset that there is very little need for the FDIC to develop any sort of factual record with respect to a decision regarding plaintiff's mechanic's lien. Moreover, the FDIC has no agency expertise with respect to the question presented by plaintiff's claim. Finally, and most important, a stay would be inappropriate where the court cannot be reasonably certain that the rights of plaintiff will be protected. The FDIC has candidly acknowledged that, at present, it has *no* procedures for reviewing claims such as the one presented by plaintiff in this case. Reply of the FDIC (Docket No. 16) at 2 n. 1. In these circumstances, I conclude that a stay would be inappropriate.

### ORDER

For the foregoing reasons, it is ORDERED:

Plaintiff's Motion to Substitute Federal Deposit Insurance Corporation as Defendant (Docket No. 7) is allowed.

Defendant's request for a stay, filed in state court and opposed by plaintiff (Docket No. 6) is denied.

Plaintiff's Motion for an Order Compelling Discovery (Docket No. 10) is allowed. Defendant is ordered to respond to otherwise proper interrogatories within the time provided in the Federal Rules of Civil Procedure.

Defendant's Motion to Dismiss (Docket No. 9) is denied.