**Eugene G. KAYSER, Plaintiff,**

**v.**

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Defendant.**

**No. C–88–2026 SAW.**

United States District Court, N.D. California.

June 7, 1989.

Kirt F. Zeigler, Robert Rutherfurd, Anderson, Zeigler, Disharoon & Gray, Santa Rosa, Cal., for plaintiff.

R. Lee Anderson, Office of the General Counsel, Federal Home Loan Bank Bd., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff Eugene G. Kayser sues defendant Federal Savings and Loan Insurance Corporation (FSLIC) to enforce his claim for deposit insurance.

Plaintiff and his stepson, Peter J. Del Chiaro (Del Chiaro), held three accounts at Centennial Savings and Loan of Santa Rosa, California (Centennial).[1] Centennial's eligible deposits were insured by FSLIC. On April 24, 1987, the Federal Home Loan Bank Board (FHLBB) found that Centennial was insolvent and appointed FSLIC as receiver. Based on Centennial's records, FSLIC determined that the three accounts held by plaintiff and Del Chiaro were jointly owned.[2] For insurance purposes, FSLIC totalled the three accounts and insured $100,000, leaving $72,-641.92 uninsured.

On December 18, 1987, plaintiff and Del Chiaro requested FSLIC to reconsider, contending that plaintiff was the sole owner of accounts 63–2038 and 94–386, while Del Chiaro was the sole owner of account 90–5007. On April 18, 1988, FSLIC denied the request. Plaintiff filed this action on May 27, 1988, to recover $72,641.92, plus interest and costs.

FSLIC moves to dismiss, or in the alternative, for summary judgment. Plaintiff has filed a cross-motion for summary judgment.

The facts relevant to deciding the issues generated by the cross-motions are not disputed.

Plaintiff's and Del Chiaro's names appeared on each of the three accounts. Both had executed signature cards for accounts 63–2038 and 90–5007. FSLIC's insurance adjuster was confused by an ambiguity on the face of the signature card for account 90–5007. The adjuster's notes show he was unsure whether that account was the "individual account" of Del Chiaro or a "joint account" of plaintiff and Del Chiaro.[3]

Only plaintiff's social security number appeared on accounts 63–2038 and 94–386, while only Del Chiaro's appeared on account 90–5007. Plaintiff paid all taxes on interest earned for accounts 63–2038 and 94–386, while Del Chiaro paid all taxes on interest earned for account 90–5007. Plaintiff made all deposits to and withdrawals from accounts 63–2038 and 94–386, while Del Chiaro made all deposits to and withdrawals from account 90–5007. The checks for account 90–5007 were issued in the name of Peter Del Chiaro alone.

Plaintiff claims his name was added to Del Chiaro's account 90–5007 (and Del Chiaro's name to plaintiff's accounts 63–2038 and 94–386) for convenience and to allow each to act in the event of the other's

1. On April 24, 1987, the accounts stood as follows:

| Account No. | Balance |
| --- | --- |
| 63–2038 | $ 79,113.16 |
| 94–386 | $ 3,213.87 |
| 90–5007 | $ 90,314.89 |
| Total: | $172,641.92 |

2. FSLIC elaborated its reasons for designating account 90–5007 as a jointly owned account, but did not indicate what records of Centennial it relied on to show that accounts 63–2038 and 94–386 were jointly owned. Nevertheless, it concluded these accounts were jointly owned as well.

3. The following appears in the notes of the adjuster concerning account 90–5007:

"Account No. 3 is an unusual case in that the computer label is styled Pete J. Del Chiaro or Eugene Kayser. However, the sig card is, or appears to be, an individual sig. card signed on one side by Pete, with his Social Security number typed on the face of card. On the reverse side of the card, Eugene's ~~name~~ signature appears, but with no Social Security number. It is unclear whether this is a joint account between Pete and Eugene (in which case it is aggregated with accounts 1 & 2 for a total of 172,641.92 with 72,641.92 uninsured, or an individual account of Pete. The owners claim it is all Pete's money and account in which case, fully insured). As proof, they delivered proof that Pete's Social Security number is ~~only~~ the number on the card, that Pete paid income tax on interest earned from account and that all checks were styled Pete J. Del Chiaro and have only been drawn by Pete."

incapacity. Plaintiff alleges he and Del Chiaro did not intend to bestow on each other any ownership rights in the other's funds.

## I.

■ The Court must first determine the appropriate standard of review to apply to plaintiff's claim for insurance from FSLIC. Plaintiff contends his insurance claim should be determined by the Court in a *de novo* proceeding. FSLIC contends that its insurance decision as to the three accounts should be reviewed under the "arbitrary and capricious" standard of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*

Reviewing courts ordinarily must accord "considerable weight" to an agency's construction of its governing statutory scheme. *Morrison-Knudsen Co., Inc. v. CHG International, Inc.,* 811 F.2d 1209, 1215 (9th Cir.1987), *cert. dismissed,* — U.S. ——, 109 S.Ct. 358, 102 L.Ed.2d 349 (1988) (quoting *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). However, agency interpretations contrary to clear congressional intent must be rejected, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-3 & n. 9, 104 S.Ct. at 2781-82 & n. 9; *Morrison-Knudsen,* 811 F.2d at 1215.

■ Here, the statutory scheme indicates Congress' intent that persons with deposits in insured savings and loan institutions be able to institute *de novo* proceedings against FSLIC to collect insurance proceeds. *See York Bank & Trust v. Federal Sav. & Loan Ins. Corp.,* 851 F.2d 637, 641-43 (3d Cir.1988) (Stapleton, J., dissenting); *Morrison-Knudsen,* 811 F.2d at 1220, 1222; *Jugum v. Federal Sav. & Loan Ins. Corp.,* 637 F.Supp. 1045, 1046-48 (W.D.Wash.1986); *see e.g., Coit Independence Joint Venture v. FSLIC,* — U.S. ——, —— - ——, 109 S.Ct. 1361, 1368-71, 103 L.Ed.2d 602 (1989) (holding the statutes governing FSLIC do not grant it adjudicatory power over creditors' claims against

insolvent savings and loan associations under FSLIC receivership and do not divest the courts of jurisdiction to consider those claims *de novo* ).

Several provisions of the statute establishing FSLIC's role as insurer make plain Congressional intent that depositor claims for FSLIC insurance be adjudicated in federal district court. FSLIC is authorized "to sue and be sued ... in any court of competent jurisdiction ..." 12 U.S.C. § 1725(c)(4). This language waives sovereign immunity. *Morrison-Knudsen,* 811 F.2d at 1223 (citing *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940); *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 369 (7th Cir.), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979)). Moreover, the following provision grants subject matter jurisdiction to the courts over suits in which FSLIC is a party:

> "Notwithstanding any other provision of law, ... (B) any civil action, suit, or proceeding to which the [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy."

*Id.* § 1730(k)(1)(B); *see also Coit Independence Joint Venture,* — U.S. at ——, 109 S.Ct. at 1371.

FSLIC has the express duty to pay "as soon as possible" claims for insured accounts upon the default of an insured institution. 12 U.S.C. § 1728(b). If a depositor disputes the FSLIC's insurance payment, he may bring suit. *See Id.* §§ 1728(c), 1730(k)(1).

One other provision further illustrates Congress' intent to bestow on the courts adjudicatory powers as to FSLIC insurance decisions:

> "[i]n the event of default by any insured institution, payment of each insured account in such insured institution ... shall be made by the [FSLIC] as soon as possible.... *Provided,* That the [FSLIC], in its discretion, may require proof of claims to be filed before paying the insured accounts, and ... in any case

where the [FSLIC] is not satisfied as to the validity of a claim for an insured account, it may require the final determination of a court of competent jurisdiction before paying the claim."

*Id.* § 1728(b).

Therefore, as the Ninth Circuit recently observed with respect to this section, "the language used indicates unambiguously that Congress anticipated judicial adjudication in the event of a disputed claim." *Morrison–Knudsen*, 811 F.2d at 1220 (citing *Jugum*, 637 F.Supp. at 1047); *see Coit Independence Joint Venture*, —— U.S. at ——, 109 S.Ct. at 1368–69.

In *Morrison–Knudsen*, the court further observed:

"As receiver for failed institutions ... the FSLIC stands in the shoes of the insured institution.... It is empowered and indeed obliged to pay all valid *depositors'* and creditors' claims up to certain limits in orderly fashion and without immediate judicial supervision.... But when a claim is disputed and agreement cannot be reached, FSLIC is obliged to attend court just as the institutions it represents would have had to do."

811 F.2d at 1222 (emphasis added).[4]

## II.

FSLIC's motion for summary judgment rests primarily on its argument that the records of Centennial are conclusive as to whether the three accounts held by plaintiff and Del Chiaro were jointly or individually owned. FSLIC contends that because those records show that plaintiff and Del Chiaro each had executed an account signature card and possessed withdrawal rights on the three accounts, they must be treated as "joint accounts". *See* 12 C.F.R. § 564.9(b) (1987).[5] FSLIC maintains that in accordance with its regulations,

"[a]ll joint accounts owned by the same combination of individuals shall first be added together and insured up to $100,-000 in the aggregate."

*Id.* § 564.9(d). Thus, FSLIC contends it correctly decided that the three accounts totalling $172,641.92 were insured only up to $100,000.[6]

Plaintiff contends that *actual* ownership of the three accounts should determine their proper classification for insurance purposes; that California law governs the issue of ownership; and that under California law the accounts were not owned jointly, but that plaintiff owned individually accounts 63–2038 and 94–386 while Del Chiaro owned individually account 90–5007. Plaintiff maintains that accounts 63–2038 and 94–386 should be considered separately from account 90–5007 for insurance purposes because accounts owned *jointly* are to be insured separately from accounts *individually* owned by the respective co-owners of the joint accounts, *see* 12 C.F.R. § 564.9(a)[7]. If the Court accepts plaintiff's argument, each of the three accounts would be fully insured.

The reasoning of Judge Coughenour in *Jugum* is persuasive in supporting the argument of plaintiff here. There, the court observed that section 564.9(b), which refers to "co-owners" for purposes of determining whether or not a joint account exists, does

---

**4.** The Court notes that plaintiff has exhausted his administrative remedies, as required by 12 C.F.R. 564.1(d). The fact that FSLIC has established regulations requiring exhaustion does not change the Court's determination that Congress intended suits involving FSLIC's payment of insurance claims to be heard *de novo* in federal district court. *Coit Independence Joint Venture*, —— U.S. at ——, 109 S.Ct. at 1371–72.

**5.** 12 C.F.R. § 564.9(b) (1987) provides:
"A joint account shall be deemed to exist for purpose [sic] of insurance of accounts, only if each co-owner has personally executed an account signature card and possesses withdrawal rights."

**6.** FSLIC concedes that plaintiff has submitted evidence to show separate ownership between the three accounts. It argues, nevertheless, that the accounts satisfy the definition of "joint account" contained in section 564.9(b) and therefore must be added together pursuant to section 564.9(d) before applying the $100,000 insurance limit.

**7.** 12 C.F.R. § 564.3(a) provides:
"Accounts owned jointly ... shall be insured separately from accounts individually owned by the co-owners."

not resolve the question of ownership itself. *Jugum,* 637 F.Supp. at 1049–50.

FSLIC's claim that the provisions of sections 564.9(b) and 564.9(d) determine the question of ownership is not well taken. The Appendix to these regulations, as the *Jugum* court noted, provides appropriate guidance.

"The examples, *as well as the rules which they interpret,* are predicated upon the assumption that invested funds are actually owned in the manner indicated on the institution's records. If *available evidence shows that ownership is different from that on the institution's records,* the Federal Savings and Loan Insurance Corporation may pay claims for insured accounts on the basis of *actual rather than ostensible ownership.*

12 C.F.R. § 564 (appendix to Part 564) (emphasis added).

■ This appendix makes it clear that insurance claims should be determined on the basis of *actual* rather than *ostensible* ownership. Upon review of the evidence *de novo,* it is clear from the record that the "actual" ownership of accounts 90–5007, 63–2038 and 94–386 was different from the "ostensible" ownership of those accounts, as may have been indicated by some of Centennial's records.

■ The insurance adjuster for FSLIC who reviewed the Centennial signature card for account 90–5007 was confused by ambiguity on the face of that card. The adjuster's notes indicate he was unsure whether or not that account was the "individual account" of Del Chiaro or a "joint account" between plaintiff and Del Chiaro. *See supra* n. 5.

If Centennial were a party to this action, the Court would resolve this ambiguity in favor of plaintiff and against Centennial as drafter of the card. This ambiguity now must be resolved against FSLIC, which, "[a]s receiver for failed institutions, ... stands in the shoes of the insured institution." *Morrison–Knudsen,* 811 F.2d at 1222.

Based on the evidence, the Court concludes that account 90–5007 is owned individually by Del Chiaro. Since FSLIC has not controverted the evidence offered by plaintiff in support of plaintiff's cross-motion for summary judgment, plaintiff has met the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### III.

The calculation of insurance to be paid on accounts 90–5007, 63–2038 and 94–386 should be determined under 12 C.F.R. § 564.9(a) which provides that "[a]ccounts jointly owned ... shall be insured separately from accounts individually owned by the co-owners." Even if accounts 63–2038 and 94–386 were jointly owned by plaintiff and Del Chiaro, they must be insured separately from account 90–5007 owned individually by Del Chiaro. The $100,000 insurance limit should be applied separately to accounts 63–2038 and 94–386 (containing in them a sum of $82,327.03) and to account 90–5007 (containing $90,314.89). This determination results in the total sums in those respective accounts being insured. Plaintiff is entitled to $72,641.92, plus interest at the appropriate rate from April 24, 1987.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Defendant FSLIC's motion for summary judgment is DENIED;

(2) Plaintiff Eugene G. Kayser's motion for summary judgment is GRANTED.