Joe P. **FARINA**, Plaintiff-Appellant,

v.

**MISSION INVESTMENT TRUST et al.,**
**Defendants-Appellees.**

No. 78–1579.

United States Court of Appeals,
Fifth Circuit.

April 23, 1980.

Richard L. Jackson, Dallas, Tex., for plaintiff-appellant.

Royal H. Brin, Jr., Dallas, Tex., for Federal Deposit Ins. Corp.

O. Carl Hamilton, Jr., McAllen, Tex., for Rio Grande Building and Loan Association.

Hughes, Luce, Hennessy, Smith & Castle, H. Robert Powell, William B. Finkelstein, Dallas, Tex., for Midland Mortgage Investors Trust, et al.

Thompson, Knight, Simmons & Bullion, Molly Steele Bishop, Dallas, Tex., for Mission Investment Trust.

Before COLEMAN, Chief Judge, REAVLEY and ANDERSON, Circuit Judges.

COLEMAN, Chief Judge.

This action began as a lawsuit in the 162nd Judicial District Court of Dallas County, Texas by Joe P. Farina to set aside a $14 million debt he owed on a complex real estate transaction. It ended with a federal district court dismissing Farina's suit, granting summary judgment to defendants on a counterclaim, and finding that Farina failed to prosecute his claim with diligence.

Farina appeals on the grounds that (1) improper transfer of this case from the state to federal district court deprives the federal district court of essential subject matter jurisdiction, and compels that we reverse the judgment and send it back for remand to the state court, and (2) that the summary judgment against Farina and for defendants was an abuse of the court's discretion.

We affirm the District Court's actions. We find the District Court had subject matter jurisdiction in this case, and that it did not abuse its discretion when it dismissed the plaintiff's suit, entered a summary judgment for defendants, and found the plaintiff did not diligently prosecute his case.

Prior to April 25, 1973, appellant Joe P. Farina (referred to as "Farina") entered into a series of complex mortgage agreements to purchase approximately 592 acres of land for resale. On April 25, 1973, Farina executed a promissory note for $16 million payable to Gulf South Advisors, Ltd. ("Gulf"). Gulf was a consortium, made up of five participants: (1) Mission Investment Trust (Mission); (2) Midland Mortgage Investors Trust (Midland); (3) Rio Grande Building and Loan Association (Rio); (4) International City Bank of New Orleans (ICB); and (5) Standard and Accident Insurance Company.[1] The $16 million was a wraparound loan, covering previous advances, interest, tax due, and those advances and other expenses anticipated over the life of the loan.

The record does not provide much information on Farina's repayment of these creditors in the first year of his loan, but in 1975 the $16 million loan was in default, and Gulf went into bankruptcy.[2] The $16 million loan became part of Gulf's bankruptcy estate. Farina had indicated to his creditors that he might charge them with violation of the usury laws of Texas.[3] The consortium wanted to continue the loan, and wanted to get it out of the bankruptcy estate, but it did not want to face a suit with Farina on the question of usury. Based on these considerations Farina and the consortium came to an agreement. The consortium advanced Farina $14 million to pay off the principal and interest due on the $16 million loan. They added Gary Null as Trustee of the Deed of Trust, and Texas American Bank as the nominee to hold the note for the lender institutions. Prior to making advances to Farina the consortium asked him to sign two releases. The First Release was for purposes of the bankruptcy process, and the second was for the $14 million note.

On the First Release Farina made an appearance before the United States District Court of the Western District of Oklahoma, to get the approval of the renegotiated loan from the judge involved in the bankruptcy process. Judge Luther Bohanon approved the release, finding it to be made for mutual consideration.[4] Farina waived all claims of usury involving the $16 million loan in the First Release.[5] In the

---

1. The interest owned by Standard and Accident Insurance Company was purchased by Mission and Midland prior to this suit.

2. There is no indication in the record that these two events were related.

3. Articles 5069–1.02 and 5069–8.02 of the Revised Civil Statutes of the State of Texas.

4. Judge Bohanon entered an Order August 8, 1975, stating that Farina had applied to his court for approval of his agreement with the consortium. In his Order the Judge made the following specific findings:

THE COURT DOES FIND:

1. That the agreement attached hereto and made a part hereof, involving mutual releases concerning the Joe P. Farina $16,-000,000 loan . . . which will settle the numerous claims . . . should be approved;

2. That there is mutual consideration for the various documents required to be executed and delivered by said agreement;

\* \* \* \* \* \*

IT IS ORDERED that the agreement attached hereto and made a part hereof be, and the same is hereby approved; . . . .

5. In a document titled "Agreement and Mutual Release" Farina made these representations:

3. Farina represents and warrants to the Lenders the following:

\* \* \* \* \* \*

(c) No amounts were paid, charged or contracted for with regard to the $16,000,000.00 Loan in addition to the ten percent (10%) interest rate stated in the $16,000,000.00 Note which would or could constitute additional interest on the $16,000,000.00 Loan.

\* \* \* \* \* \*

(f) Farina has no notice or knowledge of any facts or information relating to the disbursement or use of the proceeds advanced to Farina with regard to the $16,000,000.00 Loan which would cause him to believe that such disbursement or use would constitute or be construed as interest so as to cause the

Second Release Farina stated that he had consulted counsel and based upon that advice had determined that the $14 million loan was not usurious either.[6] Both releases were signed July 30, 1975.

Farina's repayment of the $14 million loan was no better than his repayment of the $16 million loan. In 1977 he was in default again. He was given 21 days notice that on April 5, 1977, the Trustee would sell the Deed of Trust at the courthouse door in Dallas. Farina filed a suit in the 162nd District Court of Texas on April 5, 1977 (just 31 minutes before the foreclosure sale), asking the court to issue an injunction to prevent the sale, and asking it to void the $14 million debt as being in violation of the Texas usury laws.

In his suit Farina named as defendants Mission, Midland, ICB, Rio, Exchange Bank and Trust (later called Texas American Bank), and Gary Null. Farina served the petition for ICB to the Federal Deposit Insurance Corporation (FDIC), stating in the petition that he understood that ICB was in receivership, and that the FDIC was its receiver.

The FDIC anticipated Farina's suit. Less than an hour after Farina filed in the 162nd Court the FDIC filed a Petition for Removal in the United States District Court of the Northern District of Texas. FDIC cited 12 U.S.C. 1819(4)[7] as its basis for removal, and for jurisdiction in federal courts. In its sworn Petition for Removal the FDIC stated it was a "successor in interest" to ICB.

> $16,000,000.00 Loan or the Refinanced Loans (as defined below) to be in violation of any laws as to usury or limitation on interest.
>
> (g) Farina has no notice or knowledge of any facts or information relating to the loans (the "Refinanced Loans") by Palomar Mortgage Investors (now Mission Investors Trust) and Midland Mortgage Investors or others to Farina which were refinanced in whole or in part by the proceeds from the $16,000,000.00 Loan which would cause him to believe that such Refinanced Loans or the refinancing of such Loans would constitute, be construed as, or include a violation of any laws as to usury or limitation on interest.
>
> Farina hereby acknowledges that he has fully investigated with professional assistance all of the facts and information available to him with regard to each of the above referenced loans and further acknowledges that the Lenders are relying on the aforesaid representations and warranties in their agreement to make the $14,000,000.00 Loan.
>
> \* \* \* \* \* \*
>
> 8. Farina hereby releases each of the Lenders and their subsidiaries, affiliates, officers, directors, trustees, shareholders, employees, joint participants, agents, nominees and any one acting on their behalf from any and all losses, damages, claims, causes of action, costs and expenses which Farina may have, or suffer, arising out of or in connection with the $16,000,000.00 Note, $16,000,000.00 Deed of Trust, Land Assemblage Loan Agreement and any other instruments, documents or transactions contemplated by the $16,000,000.00 Loan, including, without limiting the generality of the foregoing, any and all claims or causes of action based upon any claimed violation of the $16,000,000.00 Loan agreements or any claims of usury.

**6.** The $14 million loan contained a side letter titled "Loan Commitment" signed by all parties including Farina which contained the following clause:

> 13. OPINION OF COUNSEL:
> Lenders shall be provided an opinion from Borrower's counsel and Lenders' local counsel, in a form acceptable to Lenders, including but not limited to, affirmative statements as to the adequacy of the Loan documents; that the Loan, as proposed, does not violate any applicable usury laws of the State of Texas; . . . .

**7.** 12 U.S.C. 1819 states in pertinent part:

> Upon June 16, 1933, the Corporation shall become a body corporate and as such shall have power—
>
> \* \* \* \* \* \*
>
> Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

In its Original Answer, dated April 25, 1977, the FDIC denied under oath that it was a receiver of ICB.[8]

Farina's suit was moved immediately to federal district court. Farina made no objection to this removal, or to FDIC's assertion that it was a Party in Farina's suit during active litigation of this case. On November 30 FDIC filed a Motion for Summary Judgment. From April 5, 1977, to March 6, 1978, Farina filed answers to FDIC's motions, and dealt with FDIC as a valid party to the suit. He did not object to FDIC's participation until after final judgment was entered against Farina, almost a year after the suit was originally filed.

Farina was not granted his injunction. Trustee Null sold the property for $1.8 million April 5, 1977. Texas American Bank then brought a counterclaim against Farina on behalf of the other members of the consortium, for the balance owed on the $14 million loan. The counterclaim was filed May 25, 1977.

From April 25, 1977 to December 9, 1977, all members of the consortium filed original answers to Farina's suit, raising the defense of accord and satisfaction, citing Farina's First and Second Release.

On August 22, 1977 Texas American Bank, in the pursuit of its counterclaim, filed Interrogatories and Requests for Admissions to Farina. The Requests for Admissions, if established, would have proven all elements of the defendants' counterclaim. On August 31, 1977 David Hunt filed a motion to withdraw as Farina's attorney, citing his "inability to establish rapport and cooperation with" Farina. The court granted this motion September 6, but warned Farina that he had 30 days to find another attorney. Failure to meet this deadline, the court warned, would result in dismissal of Farina's case with prejudice. Hunt sent Farina a letter September 15, 1977 enclosing the Judge's order, and advising Farina "It is very important that you secure another counsel prior to October 6, 1977 . . . .".

On October 3, 1977, 42 days after serving the Requests for Admissions and Interrogatories on Farina, Texas American Bank, having received neither a response nor an objection, filed a motion to have the Admissions deemed answered in its favor, in accordance with Rule 36(a)[9] of the Federal Rules of Civil Procedure. It also moved under Rule 56 for a Summary Judgment against Farina's claim and for defendants' counterclaim.

On October 11 Farina asked the Court for an extension of the 30 days given to find a new attorney. The Court extended the deadline to November 11, 1977. Farina failed to get an attorney by November 11, and did not request another extension. In the interim all other defendants filed motions for summary judgment. The Court set December 12, 1977 for a hearing on all motions.

On December 9, 1977, Farina found a new attorney. This was 104 days after Farina's old attorney had asked the Court for permission to withdraw, and 94 days after the Court had given Farina 30 days to find another attorney. Farina asked that the December 12 hearing be postponed, and it was put off until December 21, 1977.

On December 20 and 21st Farina took the first step in prosecution of his suit since he had filed the original petition in state court April 5. He filed a flurry of motions.[10]

---

8. Farina never challenged FDIC's sworn assertion it is a successor in interest to ICB, nor did it attempt to present any evidence controverting FDIC's assertion that it purchased the note Farina gave ICB. Farina's only statement on point is that FDIC presented no authority explaining the meaning of the term "successor in interest."

9. Rule 36(a) in pertinent part says "The matter [covered in the Request for Admissions] is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney . . . ."

10. On December 20 Farina filed motions styled as (1) Request for Extension of Time in Which to Answer Interrogatories, (2) Response to Request for Admissions, (3) Affidavit in Opposition to Motion for Summary Judgment, and (4) Motion of Plaintiff to Allow Filing of Response

The most important of the motions were deficient both in form and substance. His Response to Request for Admissions, filed December 20, 1977, contained assertions that he could neither affirm nor deny some Requests, without stating that he had made a reasonable inquiry into the matter in question.[11] He refused to admit or deny admissions concerning matters plainly within his knowledge, and concerning documents within his possession.[12] Farina's Affidavit in Opposition to Motion for Summary Judgment, also filed December 20, attempted to incorporate by reference his original pleadings, containing only broad allegations of fact and law.[13] He made no response to defendants' claims of accord and satisfaction through the releases.

On December 21, 1977, Texas American Bank made a motion to determine the sufficiency of Farina's answers. This motion was argued at the hearing held on the same day, along with previous motions to deem admissions answered, and motions by all defendants for summary judgment against Farina. It was not until *after* the December 21, hearing, later in that day, that Farina responded to defendants' assertion of accord and satisfaction. Farina filed an affidavit claiming failure of consideration for the releases. This affidavit was Farina's only attempt to create a genuine issue which could have made summary judgment inappropriate. Farina did not include in

this affidavit any statement of "excusable neglect" in an effort to justify his filing the affidavit late.[14] Defendants responded to Farina's claim with an argument of collateral estoppel.

On February 14, 1978 the District Court granted all defendants' motions for summary judgment, dismissed Farina's action, and entered judgment for defendants on the counterclaim. It found Farina estopped, both collaterally and judicially, from asserting lack of consideration as a defense. It deemed the Requests for Admissions answered in favor of defendants. It found Farina guilty of dilatory tactics, and on its own motion added failure to prosecute the suit diligently as a basis for dismissing Farina's suit.

On March 6, 1978, for the first time, Farina raised an objection to the presence of FDIC in the suit. He filed a motion for a remand to state court, alleging that the presence of FDIC, whom he characterizes as a "non-party" or a "stranger", was unwarranted, and that without FDIC the federal court lacked subject matter jurisdiction.

On March 28, 1978, Farina filed a notice of appeal of the February 14 final judgment. The District Court denied Farina's motion for a remand April 8. The appeal from the denial of the motion for remand reached us before the appeal on the final

---

to Request for Admissions. On December 21 he filed these motions: (1) Supplemental Affidavit in Opposition to Motion for Summary Judgment, (2) Plaintiff's Response to Motion for Summary Judgment, (3) Motion for Leave to File Supplemental Pleading, (4) Motion to Supplement Affidavit, (5) Response to Motion to Determine Sufficiency of Answers, and (6) Answer to Counterclaim of Exchange Bank and Trust Company.

11. Rule 36(a) says "An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny."

12. Farina refused to admit or deny the genuineness of the First Release or the court order issued by Judge Bohanon in response to Farina's request for him to approve Farina's agree-

ment with the consortium on the $16 million loan, and the mutual releases they signed.

13. Rule 56(e) says "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

14. Rule 6(b) says "When by these rules . . an act is required . . . to be done at or within a specified time, the court for cause shown may at any time in its discretion

    \*   \*   \*   \*   \*   \*

(2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; . . ."

judgment. It was briefed thoroughly by all parties, and on May 4, 1978, this Court denied Farina's motion.

With this recitation of the tangled history of Farina's effort to raise his case from the dead we now turn to Farina's appeal of the February 14, 1978 final judgment, including Farina's assertion that the District Court was without subject matter jurisdiction.

Did the Federal District Court have subject matter jurisdiction here? If it did, was the grant of summary judgment for defendants' counterclaims and the dismissal of Farina's suit an abuse of discretion?

### Subject Matter Jurisdiction

Farina asserts the Federal District Court lacked *subject matter jurisdiction.* He does not argue that the court lacked jurisdiction over the parties, or removal jurisdiction, because he recognizes that such objections were waived by his failure to raise them prior to a final judgment. Rule 12(h)(1), Fed.R.Civ.Pro.;[15] *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702–03, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972).[16]

■■■■ The claim that there was no subject matter jurisdiction rests upon the wording of 12 U.S.C. 1819(4), which states that "All suits of a civil nature . . . to which the Corporation [the FDIC] shall be a *party* shall be deemed to arise under the laws of the United States, and the United States district court shall have origi-

nal jurisdiction thereof . . . ." Farina argues that the FDIC was never properly made a *party* to this suit. There is no diversity of citizenship or federal question in the suit, thus if the FDIC was not a party as specified by 12 U.S.C. 1819(4) the District Court was without jurisdiction here. Farina continues by arguing that the only way the FDIC could have been made a party would have been by being named as a party on the original petition.

Even so, there are other ways by which one can become a "party" defendant to a lawsuit. One may intervene under Rule 24.[17] One may also be added as a party on the motion of either party, or at the court's discretion, as provided by Rule 21.[18] Farina argues that the FDIC never made a formal petition to intervene, as specified by Rule 24(c) nor did the Federal District Court make a formal motion to add it as a party. Farina's argument would render federal pleadings excessively technical, contrary to Rule 8(e)(1), which states that "No technical forms of pleadings or motions are required," and Rule 8(f) which states that "All pleadings shall be so construed as to do substantial justice." Since Farina failed to raise this point until after a final judgment, jurisdiction will be determined at the point of final judgment. If the federal court could have exercised original jurisdiction over the subject matter at the time final judgment was entered, Farina will be estopped from asserting there was no right to

---

**15.** Rule 12(h)(1) provides:

(h) *Waiver or Preservation of Certain Defenses.*

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a)· to be made as a matter of course.

**16.** If the Court had subject matter jurisdiction at the time the removal was made, the party who failed to object to the removal prior to a final judgment waived the objection.

**17.** Rule 24(a) makes intervention a matter of right, stating:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FDIC qualified under both parts (1) and (2) of this section.

**18.** Rule 21 provides that "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

remove initially. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951); *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1348, 31 L.Ed.2d 612.

■ On the day Farina initially filed his suit in the 162nd Court of Texas the FDIC filed a motion to remove. Although FDIC did not formally file a motion to intervene, as specified in Rule 24(c), it was within the discretion of the District Court to treat the motion to remove as also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in the suit. In its final judgment the District Court found that the FDIC was a "successor in interest to ICB". Even assuming that the District Court had not treated the motion to remove as also a motion to intervene it is reasonable to interpret such finding as an addition · of FDIC as a party, on the court's own motion, pursuant to Rule 21. In either event the FDIC was properly a party to the suit at the time of final judgment. That being the case, subject matter jurisdiction is clearly conferred upon the court by 12 U.S.C. 1819(4).[19]

### Abuse of Discretion

■ Rule 56 allows a party to file for a summary judgment on any claim or counterclaim which is not sufficiently controverted by evidence in the record. The test is whether there is any genuine issue of material fact in the record and whether the moving party is entitled, as a matter of law, to the summary judgment. If there is no genuine issue of material fact, then the moving party is entitled to summary judgment on the issue or issues. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Heyward v. Public Housing Administration*, 238 F.2d 689, 696 (5th Cir. 1956). The moving party must sustain the burden of establishing there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975).

Farina filed pleadings alleging that the $14 million debt he owed was usurious. Texas American Bank pled release as a defense to the usury claim, and filed a counterclaim for the remainder owed by Farina after the foreclosure sale. Farina admitted the execution of the Second Release, but failed to admit the First Release. Texas American Bank established it by affidavit of Robin E. Drew, and by a certified copy of Judge Bohanon's order relating to this release. Farina admitted the genuineness of the $14 million note, which was the basis for the counterclaim.

Up until the date of the hearing on the motions for summary judgment Farina made little effort to prosecute his case. On December 20, 1977, the day before the hearing, Farina filed 1) a Request for Extension of Time in Which to Answer Interrogatories, 2) a Response to the Request for Admissions, 3) a Motion to Allow Filing of Response to Request for Admissions, and 4) an Affidavit in Opposition to Motion for Summary Judgment. The latter contained no summary judgment proof, as required by Rule 56(e). It contained no affidavits or specific facts controverting either the $14 million debt, or the affidavits of Texas American Bank on their allegation of release. Farina attempted only to incorpo-

---

**19.** Farina says he served FDIC with a copy of his original suit in its capacity as receiver for ICB rather than as a party with an interest in the $14 million loan. Farina never offered any proof that FDIC was a receiver for ICB. Even if he had, this would not by itself deny FDIC party status, or deprive the federal district court of subject matter jurisdiction in this case. 12 U.S.C. 1819(4) provides liberal removal rights for the FDIC to federal courts, deeming the subject matter of the suit in which it is a party as rising under federal laws ". . . except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves *only the rights or obligations of depositors, creditors, stockholders*, and such State bank under State law . . ." (emphasis added). Although Farina contends FDIC was a receiver for ICB, he never argued that its only capacity was representing the rights or obligations of depositors, creditors or stockholders.

rate by reference his original pleadings, including broad statements of fact and law.

On December 21, 1977 Farina attended the hearing on the Motions for Summary Judgment, and realized the deficiency of his affidavit in opposition to the motions. After the hearing was over he attempted to file a supplemental affidavit in opposition to the motions for summary judgment. In this supplemental affidavit Farina denied that he ever intended to release his usury claims and asserted for the first time that the purported releases were made for no new consideration. Again Farina failed to meet the requirements of Rule 56(e). Additionally, Farina made no showing of "excusable neglect" as required by Rule 6(b) to justify having the Court enlarge the period it had set for filing affidavits relating to the motions for summary judgments. The Court refused to accept the supplemental affidavit. This refusal was amply justified.

Even if the supplemental affidavit had met the summary judgment pleading requirements of Rule 56(e), absent an affirmative showing by the non-moving party of excusable neglect according to Rule 6(b) a court does not abuse its discretion when it refuses to accept out-of-time affidavits. *Beaufort Concrete Co. v. Atlantic States Construction Co.*, 352 F.2d 460, 462 (5th Cir. 1965), *cert. denied*, 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018 (1966); *Woods v. Allied Concord Financial Corporation* (Del.), 373 F.2d 733, 734 (5th Cir. 1967). There existed no genuine issue of fact and, therefore, defendants were entitled as a matter of law to a summary judgment on the counterclaim.

In addition to dismissing Farina's claim as part of its summary judgment determination, the Court on its own motion dismissed Farina's claim for failure to prosecute his claim with diligence. This is one of the most extreme forms of sanctions available to the court, and will be upheld only where there is a "clear record of delay or contumacious conduct" on Farina's part. *Durham v. Florida East Coast Railway Company*, 385 F.2d 366, 368 (5th Cir. 1967). Lesser sanctions are preferable except where they would not "better serve the interests of justice." *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970). The record before us supports the District Court's finding that Farina was guilty of delay and calculated dilatory tactics.

The record demonstrates in Farina a plaintiff who made no move until the last possible moment and often failed to meet the minimal requirements of the Federal Rules of Civil Procedure. The original suit was filed 31 minutes prior to the foreclosure sale, even though he had several weeks notice of the pending sale. From that date, April 5, 1977, until December 20, 1977, he made no further moves on his suit. He served no interrogatories of his own and made no requests for admissions at any time in the trial. Farina was served with requests for admissions and interrogatories August 22, 1977. He took 121 days to respond to the Admissions and then filed deficient responses. He never responded to the Interrogatories.

Farina was given ample time to respond to the motions for summary judgment, but failed to provide any summary judgment evidence prior to the December 21 hearing. After the hearing he attempted to file a Supplemental Affidavit but still did not provide adequate summary judgment evidence. He failed to provide along with the untimely supplemental affidavit elemental justification for submitting the affidavit late. Between the December 21 hearing and the February 14, 1978 final judgment, 55 days, Farina made no further steps in furtherance of his suit.

It is true that from August 22 to December 9, 1977, Farina had no attorney, but no explanation is offered for the inability to find an attorney in the 104-day period. During this period Farina made only one request for an extension of time given him by the Court to find an attorney. On October 11, 5 days after a previous 30 day deadline had elapsed, Farina asked for an extension. When this second deadline lapsed, November 11, Farina did not go to the trouble to ask for another extension.

Taken separately, each individual act cited might not indicate intentional delay and dilatory tactics. We have no doubt, however, that taken together all events amply support the dismissal of Farina's claim for failure to prosecute that claim diligently.

The actions of the District Court are, in all respects,

AFFIRMED.