**YANKEE BANK FOR FINANCE & SAVINGS, FSB (Now the Federal Deposit Insurance Corporation, In Its Capacity as Receiver for Yankee Bank for Finance & Savings, FSB), Plaintiff,**

v.

**HANOVER SQUARE ASSOCIATES–ONE LIMITED PARTNERSHIP, et al., Defendants.**

**YANKEE BANK FOR FINANCE & SAVINGS, FSB (Now the Federal Deposit Insurance Corporation, In Its Capacity as Receiver for Yankee Bank for Finance & Savings, FSB), Plaintiff,**

v.

**TASK ASSOCIATES, INC., et al., Defendants.**

**Nos. 88–CV–223, 88–CV–224.**

United States District Court, N.D. New York.

Aug. 22, 1988.

Hancock & Estabrook, Syracuse, N.Y. (Thomas C. Buckel, Jr., of counsel), for plaintiff.

Jacobs and Forward, Lafayette, N.Y., for Advanced Piping.

Germain & Germain, Syracuse, N.Y. (Rocco Mangano, of counsel), for Airside Technology.

Menter Rudin & Trivelpiece, Syracuse, N.Y. (Antonio E. Caruso, of counsel), for Blais Const. and Consol. Elec.

DeVaul and Myers, Cicero, N.Y. (Thomas W. Myers, of counsel), for Cicero Lumber.

Harris Beach Wilcox Rubin & Levey, Rochester, N.Y. (Bruce L. Maas, of counsel), for Hanover Square Associates–One Ltd. Partnership.

David M. Malone, Little Falls, N.Y., for Little Falls Lumber.

Walter G. Breakell, Albany, N.Y., for McQuade and Bannigan.

Wiles Fahey & Lynch, Syracuse, N.Y. (Christopher Wiles, of counsel), for Sipple.

Rinaldi & Rinaldi, Syracuse, N.Y. (John R. Rinaldi, of counsel), for Spinos and Colozzi.

Welch Welch & Carr, Syracuse, N.Y. (Anthony P. Adorante, of counsel), for Truax & Hovey & Hosek Contractors.

Robert W. Hartnett, Syracuse, N.Y., for Lenehan & Sawicke.

Williams Micale & Wells, Syracuse, N.Y. (Peter Hogan, of counsel), for Raynor Overhead Door.

John L. Stinziano, Syracuse, N.Y., for Robertson, Strong Apgar Architects, P.C.

MacKenzie Smith Lewis Michell & Hughes, Syracuse, N.Y. (Alfred W. Popkess, of counsel), for Ajay Glass.

Bryant O'Dell and Basso, Syracuse, N.Y. (Robert Silkey, of counsel), for Armani Plumbing, Schalk, Simone, WCA Roofing & MCK Bldg. & B & P Ceramic.

Bond Schoeneck & King, Syracuse, N.Y. (Joseph J. Lawton, of counsel), for Hoxie, Buttolph Lumber, Haller Enterprises, Myriad Const., Smith & Caffrey, Bianchi, Delhi Steel, Spensieri Painting & Tipperary Heating.

Andrews & Huffman, Syracuse, N.Y. (Stephen J. Ransford, of counsel), for Bohem Mfg.

Lombardi Devorsetz Stinziano & Smith, Syracuse, N.Y. (Terence A.J. Mannion, of counsel), for C.G. Boone.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y. (Alan Hegeman, Asst. Atty. Gen., of counsel), for People of the State of N.Y.

Carrigan & Ryan, Syracuse, N.Y. (William F. Carrigan, Jr., of counsel), for Surface Renewal Corp.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Presently before the court are motions by various defendants to remand these actions back to State Supreme Court, Onondaga County.[1] At a conference held several weeks prior to these motions being heard, the court indicated its inclination to decide them from the bench. After careful consideration of the papers submitted by the parties and after hearing vigorous oral argument, the court determined that due to the unique factual circumstances and the novel jurisdictional issue presented, a written decision was warranted. The court therefore reserved decision on May 24,

---

1. Plaintiff filed two separate actions in State Supreme Court, and on March 1, 1988, it removed both actions to this court. The first action will be referred to herein as the "HSA–I" action (88–CV–223); and the second action as "HSA–II" (88–CV–224).

1988. Following constitutes the court's decision with respect to this matter.

### Background

#### A. HSA–I Action

The basic facts of these actions are simple. Plaintiff, Yankee Bank for Finance & Savings, FBS ("Yankee Bank") made a construction loan and a mortgage to Hanover Square Associates–I Limited Partnership ("HSA–I"), for the acquisition and historical renovation of the Larned Building, located in Syracuse, New York. With the financing it received from Yankee Bank, in 1986 HSA–I began the planned historical renovation. In November, 1986, Yankee Bank declared that HSA–I had defaulted on its loan. Eventually, on approximately February 24, 1987, Yankee Bank commenced the present foreclosure action in Supreme Court, Onondaga County. In addition to naming HSA–I as a defendant, numerous subcontractors were also named as defendants. The subcontractors had filed mechanic's liens against the property and claim a lien priority over that of Yankee Bank. Those defendants served answers with counterclaims in the spring of 1987.

While that litigation was ongoing, on October 16, 1987, the Federal Home Loan Bank Board ("Bank Board") found that Yankee Bank was insolvent.[2] Affidavit of Michael Tucci (4/28/88) at par. 2. The Bank Board then appointed the FDIC as a receiver for the Bank, pursuant to 12 U.S.C. § 1464(d)(6)(A).[3] Despite Yankee Bank's insolvency, this action was litigated throughout 1987. During the course of that litigation, on November 30, 1987, Supreme Court Justice Thomas J. Lowery held that Yankee Bank's lien was subordinate to that of some of the mechanics' lienors, except for that portion advanced for the purchase price of the property. After the denial of their motion to stay the foreclosure action, on approximately February 2, 1988, HSA–I served an amended answer, which interposed four counterclaims against Yankee Bank. The first counterclaim basically alleges that Yankee Bank failed to fund the Larned Building project in accordance with its agreement, thereby causing damage to HSA–I. The second counterclaim alleges an unlawful tying arrangement under 12 U.S.C. § 1464(q)(1)(A–C). The third counterclaim alleges that Yankee Bank's conduct amounted to an unfair and/or deceptive act and practice under the New York General Business Law, Article 22–A. The fourth counterclaim alleges that Yankee Bank did not act with "reasonable concern for proper business practices," resulting in Yankee Bank precipitating defaults and impeding the orderly progress of the project, which damaged HSA–I. Amended Answer To Complaint And Counter–Claims, Exhibit "D" at pars. 41–43 to Affidavit of Bruce Mass (4/4/88).

After service of that amended answer, Yankee Bank then moved by an Order to Show Cause to substitute the FDIC, as the real party in interest as plaintiff. Justice Lowery reserved decision and on March 1, 1988, Yankee Bank removed the action to this court. Thus, the FDIC has not formally intervened or been substituted in as a plaintiff in this action.

#### B. HSA–II Action

This is a companion action to HSA–I with nearly identical facts. In 1986, Yankee Bank made a construction loan and mort-

---

**2.** Yankee Bank was the first federal savings bank chartered under 12 U.S.C. section 1464(*o*) to be declared insolvent and closed by the Bank Board. Tucci Affidavit at par. 2. Apparently these actions are but two of the many lawsuits across the country, which arose out of Yankee Bank's insolvency. *See, e.g., Tocci Corporation v. Yankee Bank for Finance and Savings, FSB,* 690 F.Supp. 1127 (D.Mass.1988); *Rivers v. Yankee Bank for Finance and Savings, FSB,* 690 F.Supp. 989 (S.D.Ala.1988).

**3.** 12 U.S.C. section 1464(d)(6)(A) states, in pertinent part:

The grounds for the appointment of a conservator or receiver for an association shall be one or more of the following: (i) insolvency in that the assets of the association are less than its obligations to its creditors and others, including its members....

12 U.S.C. section 1464(d)(6)(A) (West Supp. 1988).

gage to both Task Associates, Inc. ("Task") and to Hanover Square Associates-Two Limited Partnership ("HSA–II") for the acquisition and historical renovation of the SA & K Building. The same difficulties befell Task and HSA–II, and they were named as defendants in another mortgage foreclosure action commenced in Supreme Court, Onondaga County. As in the HSA–I action, numerous subcontractors were also named as defendants therein. The course of litigation in this action has been virtually identical to that of the HSA–I action, except that Justice Lowery denied, without prejudice to renew, the motion by the mechanic's lienors to establish priority over Yankee Bank's lien. Justice Lowery denied that motion as being premature in that defendants, Task and HSA–II, had not yet served answers. On March 1, 1988, Yankee Bank also removed the action to this court.

Defendants in both actions are now seeking to remand these actions back to State Supreme Court. Defendants in the HSA–I action contend that remand is mandatory because the removal was untimely. The defendants in the HSA–II action assert, in addition to untimeliness, that this court lacks subject matter jurisdiction. They also assert that removal was improper because Yankee Bank failed to file a bond. For the sake of uniformity, the court will consider all arguments raised by the various defendants with respect to both actions.

Yankee Bank responds through the FDIC that although not formally named as a plaintiff in these actions, the FDIC, as receiver, is the real party in interest, and thus this court has subject matter jurisdiction by virtue of 12 U.S.C. § 1819 (Fourth) (West 1980). Yankee Bank through the FDIC further responds that its petition for removal was timely because the thirty day time period was not triggered until the counterclaims were interposed against it in February 1988, and this action was removed within 30 days of that date. Finally, the FDIC contends that it did not waive its removal rights under § 1819 because it

was simply pursuing the state court actions, which were originally brought by Yankee Bank prior to its insolvency.

## Discussion

Before addressing the issue of whether Yankee Bank complied with the technical procedural requirements for removal, the court must consider the contention by some of the defendants that this court lacks subject matter jurisdiction to hear these actions. There are two inquiries with respect to that issue. The first is whether the failure of the FDIC to formally intervene or to be formally substituted in as a party plaintiff deprives this court of jurisdiction.

The second and more interesting issue is whether subject matter jurisdiction is vested in this court pursuant to 12 U.S.C. § 1819 (Fourth)—the sole jurisdictional predicate relied upon in plaintiff's removal petition. Basically, § 1819 (Fourth) contains a general jurisdictional grant providing that any action in which the FDIC is a party shall be deemed to arise under the laws of the United States. Section 1819 (Fourth) also contains, however, an exception to that general jurisdictional grant. Thus, assuming that the FDIC is a party to these actions, the issue is whether that exception applies to oust this court of subject matter jurisdiction. Obviously, if the jurisdictional exception applies, then the issue of whether the FDIC has properly been made a party to these actions becomes moot. Thus, whether section 1819 (Fourth)'s jurisdictional exception applies here will be addressed first.

### A. Jurisdiction

As is evidenced herein, because the nature of Yankee Bank is critical to the jurisdictional issue, a detailed discussion of its history is warranted. When Yankee Bank made the various financing arrangements with HSA–I and HSA–II, it was a federally chartered savings bank; and that charter was issued pursuant to the Home Owners Loan Act ("HOLA"), as amended, 12 U.S.C. § 1464(o).[4] Petition for Removal at par. 2.

**4.** 12 U.S.C. section 1464(o) provides, in relevant part:

In addition, the Federal Deposit Insurance Corporation ("FDIC") insured Yankee Bank's deposits. *Id.*

Yankee Bank was not, however, always a federally chartered savings bank. Yankee Bank's predecessor was Home Savings Bank of Boston, Massachusetts ("the Home Savings Bank"), a Massachusetts chartered mutual savings bank. Plaintiff's Supplemental Memorandum of law at p. 13. Prior to 1978 there was no statutory authority for conversion of state-chartered mutual savings banks, such as the Home Savings Bank, into federally chartered banks. That changed though with the enactment of the Financial Institutions Regulatory and Interest Rate Control Act of 1978 ("FIRA"), Pub.L. 95–630, 92 Stat. 3641, which *inter alia*, amended HOLA. As a result of that legislation, it became possible for state chartered mutual savings banks to obtain a federal charter.

Due to problems resulting from that legislation, in 1982 Congress enacted further legislation—the Garn–St. Germain Depository Institution Act of 1982 ("DIA"), P.L. 97–320, 96 Stat. 1469. The DIA extended the options for savings banks desiring federal charters. One effect of the DIA was to create a new institution known as a "Federal savings bank." 12 U.S.C. § 1464(*o* ) (West Supp.1988).

Pursuant to the DIA amendments to HOLA, and the Bank Board regulations enacted in accordance therewith, on April 1, 1983, the Home Savings Bank converted from a state-chartered mutual savings bank to an insured federal savings bank, which was known as the Home Savings Bank, FSB. As part of that conversion process, the Home Savings Bank also had to comply with the Massachusetts statutory conversion procedure, which provides in part:

> Any such corporation may upon a majority vote of its board of investment, petition the board of bank incorporation for authority to *surrender its charter in order to accept a savings bank charter from the federal government.* If the board of bank incorporation determines that public convenience and advantage will be promoted thereby, it shall grant such authority, which grant shall be valid for one year from the date thereof. Upon the receipt of such petition, said board shall assign a date and place for public hearing thereon and shall furnish such corporation a form of notice relative thereto.... *If the board grants approval of said petition, the state charter of said bank shall become void* provided: (1) the action of said board of investment in filing such petition has been approved by an affirmative vote of two-thirds of the corporators at the annual meeting, or at a meeting specially called for the purpose and by an affirmative vote of two-thirds of the trustees at a regular meeting or at a meeting specially called for the purpose, and (2) the commissioner has been notified in writing by the federal supervisory authority that such corporation has been granted a federal charter.

Mass.Ann.Laws ch. 168, § 36 (Law.Co-op. 1987) (emphasis added). In accordance with that provision, a public hearing was held on December 15, 1982. The reason for that hearing was to approve Home Savings Bank's petition to surrender its state charter for the express purpose of obtaining a charter as an insured federal savings bank. Plaintiff's Memorandum of Law at p. 20 *citing* telephone interview with Joseph Leonard, attorney with the Massachusetts Bank Board Legal Department. On January 5, 1983, the Massachusetts Board of Bank Incorporation approved Home Savings Bank's petition. Soon thereafter the "corporators" (those representing the mutual association's depositors) also approved the filing of the petition to surrender the state charter, with the end result being

---

Notwithstanding any other provision of this section, the Board, subject to the provisions of this subsection, may authorize, under the rules and regulations of the Board, the conversion of a State-chartered savings bank insured by the Federal Deposit Insurance Corporation into a Federal savings bank, if such conversion is not in contravention of State law, and provide for the organization, incorporation, operation, examination, and regulation of such institution.

12 U.S.C. Section 1464(*o* )(1) (West Supp.1988).

that on April 1, 1983, Home Savings Bank was granted a federal charter by the Bank Board. As required by section 36, the Massachusetts commissioner received written notification that Home Savings Bank had been granted a federal charter.

Following its conversion to an insured federal savings bank, on May 24, 1984, the Home Savings Bank was acquired by the Yankee Companies and converted to stock form. Supplemental Affidavit of Alfred Popkess (5/4/88), Exhibit "A" thereto. According to a Supervisory Agent of the Federal Home Loan Bank of Boston, "[W]hen the conversion was consummated, the institution changed its corporate title to the Yankee Bank for Finance and Savings, FSB;" *id.*, and it is with that institution that HSA–I and HSA–II dealt in making the financial arrangements for the Larned and SA & K buildings.

As previously mentioned, during the course of this litigation, Yankee Bank became insolvent and the Bank Board then appointed the FDIC as receiver. The FDIC as receiver immediately entered into a Deposit Insurance Transfer and Asset Purchase Agreement (DITASPA) with the FDIC in its corporate capacity and Boston Five Savings Bank, FSB. Affidavit of Michael Tucci (4/28/88) at par. 3. Boston Five then purchased some assets from the FDIC as receiver, including the HSA–I loan. *Id.* Shortly thereafter on November 6, 1987, the FDIC, as receiver, at the request of Boston Five, repurchased certain of those loans including the HSA–I loan. *Id.* at par. 4. It is in view of that history that the court considers the defendants' contention that this court lacks jurisdiction.

### 1. Section 1819 (Fourth)

■ 12 U.S.C. § 1819 (Fourth) provides, in pertinent part, that the FDIC has the following powers:

> To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States dis-

trict courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect,....

12 U.S.C. § 1819 (Fourth) (West 1980). Section 1819 (Fourth) also sets forth an express limitation on subject matter jurisdiction thereunder. That jurisdictional exception is:

> *[A]ny such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.*

12 U.S.C. § 1819 (Fourth) (West 1980) (emphasis added). Therefore, the express terms of that exception require that two factors must be shown in order for it to apply. *See also, Federal Deposit Insurance Corp. v. Godshall,* 558 F.2d 220, 222–23 (4th Cir.1977). First, it must be shown that the FDIC is a "party in its capacity as receiver of a State bank." Second, the action must involve only the rights or obligations of the State bank's depositors, creditors or stockholders under state law.

At oral argument, plaintiff's counsel stated that it is undisputed that the FDIC is acting as receiver here. In addition, in that plaintiff never addressed this issue in its comprehensive memoranda to the court, apparently it also concedes that these actions raise issues pertaining only to the rights or obligations of depositors, creditors or stockholders. The issue then is whether Yankee Bank was a "State bank" within the meaning of section 1819 (Fourth). If, as defendants contend, Yankee Bank was a "State bank," then obviously the jurisdictional proviso would apply to oust this court of jurisdiction.

Plaintiff contends that because Yankee Bank was a federally chartered and feder-

ally insured savings bank, and because a federal agency, the Bank Board, appointed the FDIC as a receiver, the Bank was not a State bank within the meaning of section 1819 (Fourth). Defendants contend that Yankee Bank was a "State bank" for section 1819 (Fourth) purposes based upon their belief that although Yankee Bank became federally chartered, it retained its previous corporate existence under Massachusetts law.

In support of their contention, defendants rely upon 12 U.S.C. § 1813(a), which defines State bank as that term is used in, *inter alia*, § 1819 (Fourth). Section 1813(a) defines a "State bank" as:

> [A]ny bank, banking association, trust company, savings bank, industrial bank or similar financial institution which the Board of Directors finds to be operating substantially in the same manner as an industrial bank, or other banking institution which is engaged in the business of receiving deposits, other than trust funds as therein defined, *and which is incorporated under the laws of any state,* ... (except a national bank)....

12 U.S.C. § 1813(a) (West Supp.1988) (emphasis added). In the present case, prior to converting to a federally chartered institution, the parties agree that Yankee Bank's predecessor was originally state chartered in accordance with Massachusetts law. It is the defendants' position, however, that when a bank is converted to a federally chartered institution, such as happened here, the bank retains its state incorporation status; and thus it is a State bank for section 1819 (Fourth) purposes. Popkess Supplemental Affidavit at pars. 10–11. Defendants also point out that "national banks" are excepted from the statutory definition of "State banks," but that "insured federal savings banks," such as Yan-

kee Bank, are not. *See, e.g., FDIC v. Huntington Towers Ltd.,* 443 F.Supp. 316, 318 (E.D.N.Y.1977) ("Even if FDIC had initiated this action as receiver of the Franklin National Bank, the last clause of the statute would not deny this Court subject matter jurisdiction. The exception is expressly limited to suits in which FDIC acts as receiver of a state bank and would not apply here, when FDIC would be bringing suit as receiver of a national bank.")

To support that position, defendants rely upon the statutory language highlighted above and two Bank Board regulations. Defendants reason that Yankee Bank was originally a state chartered bank, and that, according to 12 C.F.R. § 543.14, that corporate existence continues in the successor. Section 543.14 states, in relevant part:

> The corporate existence of an association converting under this part or under section 544.3 of this subchapter *shall* continue in its successor.

12 C.F.R. § 543.14 (1988) (emphasis added). In addition, defendants reason, "The 'grandfathered authority' reserved to converted mutual savings banks under 12 CFR Sect. 543.11–1 would further suggest the retention of the state incorporation."[5] Popkess Supplemental Affidavit at par. 11. The thrust of that regulation is that former state mutual savings banks, which undergo statutory conversion to become Federal savings banks, retain the right to exercise authority invested in them as state banks.

Although appealing at first glance, closer analysis reveals several flaws in defendants' argument. First, defendants are ignoring another definition set forth in section 1813. Section 1813 defines an "insured Federal savings bank" as a "Federal savings bank chartered pursuant to section 1464(*o*) ... and insured by the Corporation." 12 U.S.C. § 1813(t) (West Supp. 1988). By separately defining the terms

---

**5.** That regulation states, in part:

> (a) A Federal savings bank formerly chartered or designated as a mutual savings bank under state law may exercise any authority it was authorized to exercise as a mutual savings bank under state law at the time of its conversion from a state mutual savings bank to a Federal or other state charter. Except to the extent such authority may be exercised by Federal associations not enjoying grandfa-

> thered rights hereunder, such authority may be exercised only to the degree authorized under state law at the time of such conversion. Unless otherwise determined by the Board, an association, in the exercise of grandfathered authority, may continue to follow applicable state laws and regulations in effect at the time of such conversion.

> 12 C.F.R. section 543.11–1 (1988).

"state bank" and "insured Federal savings bank," Congress demonstrated its ability to distinguish between those two types of financial institutions for purposes of the FDIC Act. Therefore, in 1982 when Congress amended section 1813 to include the definition of an "insured Federal savings bank," if it had chosen to include that definition within the jurisdictional exception to section 1819 (Fourth), it clearly could have so done. *See, e.g., Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300–301, 78 L.Ed.2d 17 (1983) (citations omitted) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") But, Congress did not choose to so broaden the scope of the jurisdictional exception. Rather, it limited that exception to situations where the FDIC is acting as a receiver of a State bank. *See Sarraga v. Girod Vela & Co., Inc.*, 649 F.Supp. 11, 14 (D. Puerto Rico 1986) ("Based on this statute [section 1819 (Fourth)], it has been consistently held that federal courts do not have jurisdiction in suits brought by or against the FDIC acting in its capacity as receiver of a state bank, and which involve only the rights or obligations of the state bank, its depositors, etc., under state law.") (and cases cited therein).

In the present case, Yankee Bank clearly fits the statutory definition of an "insured Federal savings bank;" it was chartered pursuant to section 1464(*o*) and it was FDIC insured. The court notes in passing that Yankee Bank's proper title—Yankee Bank for Finance & Savings, FSB—provides further evidence, albeit slight, of its status as a federally insured savings bank. "FSB" stands for federal savings bank. Therefore, because insured Federal savings banks are not among those banks included in the jurisdictional limitation of section 1819 (Fourth), that exception does not operate to deprive this court of subject matter jurisdiction.

Second, the court is not convinced that the regulations upon which defendants so heavily rely mandate a different result. When read in context, it is clear that the purpose of requiring retention of the corporate existence in the successor was to insure that associations could not avoid their state related obligations simply by converting to a federally insured savings bank. Those regulations merely indicate that former state mutual savings banks, such as Yankee Bank, retain the right to exercise certain authority under state law. In the court's opinion, however, it does not necessarily follow that the retention of that state law authority and corporate existence renders the bank a "State bank" for purposes of section 1819 (Fourth). Moreover, those regulations promulgated by the Bank Board simply set forth the procedures for converting to a federally insured savings bank; they do not purport to change the definition of a State bank for purposes of the FDIC jurisdictional grant set forth in section 1819 (Fourth).

The court also observes that it is generally recognized that state banks are chartered under state statutes. 1 W.H. Schlichting, T. Rice & J. Cooper, Banking Law § 1.03[3] (1985). As previously mentioned, when Yankee Bank's predecessor received its federal charter and became a federally insured savings bank, it surrendered its state charter. Thus, it ceased to be a State bank within the generally accepted definition of such bank.

Finally, clearly federal interests predominate with respect to the former Yankee Bank. As plaintiff pointed out, Yankee Bank derived its very existence from federal statutes and it was primarily responsible to and governed by federal banking authorities. Additionally, the Bank Board, a federal agency, appointed the FDIC as receiver of the former Yankee Bank. *Cf. Federal Savings and Loan Insurance Corp. v. T.G. Partners II Ltd.*, 682 F.Supp. 894 (N.D.Tex.1988) (Court had subject matter jurisdiction over FSLIC because, among other things, the receivership was "federalized" due to the fact that the FSLIC was appointed receiver by the federal Bank Board.) Given those facts, there are potentially significant federal interests at stake here. Thus, the court concludes that the jurisdictional proviso of section 1819 (Fourth) does not operate to oust this court of subject matter jurisdiction.

### 2. Lack of Substitution of Intervention

In light of the foregoing, it now becomes necessary for the court to consider defendants' second jurisdictional argument. In particular, the defendants contend that because the FDIC was never formally named as a party, either by intervention or by substitution, this court lacks subject matter jurisdiction. The FDIC, on behalf of Yankee Bank, counters that as a receiver for Yankee Bank and holder of the subject loans, it is the real party in interest; and the absence of a formal substitution or intervention order does not change that.

■ The FDIC relies upon a number of cases to support its proposition that no substitution or intervention order was necessary to make it a party to these actions. Two of those cases are worth discussing. The first is a recent Eleventh Circuit case, *In Re Federal Sav. and Loan Ins. Corp.*, 837 F.2d 432 (11th Cir.1988). In that case, the Court stated:

> Once appointed receiver, FSLIC, like FDIC, stands, as the real party in interest, in the shoes of the received financial institution in any litigation in which the institution is a party.

*Id.* at 434. Relying upon that language, the FDIC contends that it is a party to this action. The FDIC's reliance upon that language is misplaced, however. While that language is clearly favorable to the FDIC, there was no issue as to whether the FSLIC had been properly made a party to that action, because it was a named defendant in the original state court actions. The fact that an entity, such as the FDIC, has become the real party in interest does not mean that the formal requirements for making it a party to an action can be completely disregarded. Upon becoming the real party in interest, the FDIC still had the obligation to move, as it did in state court, for substitution; and it should have waited until that decision was rendered before removing these actions to this court.

■ Despite the fact that the FDIC has not formally been substituted in as a party to this action, there is case authority, upon which plaintiff properly relied, to support its position that such formalities are not required. In *Farina v. Mission Inv. Trust*, 615 F.2d 1068 (5th Cir.1980), for example, the Court held that the district court had subject matter jurisdiction under section 1819 (Fourth) even though the FDIC never made a formal motion to intervene under Fed.R.Civ.P. 24; nor was the FDIC substituted in as a party. The plaintiff in *Farina* filed his action in Texas State Court; and on that same day the FDIC filed a motion to remove the action to federal court. Although the FDIC had been served because plaintiff understood that the FDIC was acting as receiver for one of the defendants, the FDIC was *not* one of the named defendants in the action. *Id.* at 1071. On appeal, plaintiff contended that the district court lacked subject matter jurisdiction because the FDIC, which had not been named on the original petition, was not a party within the meaning of section 1819 (Fourth).

The Fifth Circuit rejected plaintiff's argument and held that subject matter jurisdiction had been properly conferred upon the district court by section 1819 (Fourth). The Court explained that adopting plaintiff's argument "would render federal pleadings excessively technical, contrary to Rule 8(e)(1), which states that 'No technical forms of pleadings or motions are required,' and Rule 8(f) which states that 'All pleadings shall be so construed as to do substantial justice.' " *Id.* at 1074. The Court further reasoned:

> Though FDIC did not formally file a motion to intervene, as specified in Rule 24(c), it was within the discretion of the District Court to treat the motion to remove as also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in this suit.

*Id.* at 1075. Finally, the Court noted:

> Even assuming that the District Court had not treated the motion to remove as also a motion to intervene it is reasonable to interpret such findings as an addition of FDIC as a party, on the Court's own motion, pursuant to Rule 21.

*Id.*

■ At first glance, *Farina* seems directly applicable here. Closer scrutiny re-

veals, however, that this court cannot adopt, wholesale, the *Farina* court's reasoning. In particular, it light of the Second Circuit's holding that Rule 21 is not available to "deal with problems of defective jurisdiction," *Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 864 (2d Cir.1958), this court cannot rely upon that rule, as the *Farina* Court suggested, as a procedural device for including the FDIC as a plaintiff. Nonetheless, after *Farina*, intervention may be accomplished without formal motion. And this court will, in its discretion, consider the removal petition as a motion to intervene under Fed.R.Civ.P. 24.[6] In so doing, the court avoids the absurd result of remanding these actions back to state court on the basis that there is no subject matter jurisdiction because the FDIC has not been made a party; and then having the substitution motion granted in state court, and having these cases removed again.

### B. Removal Procedure

#### 1. Timeliness

■ The technical aspects of removal under section 1819 (Fourth) are governed by 28 U.S.C. § 1446(b) *Franklin National Bank Securities Litigation v. Andersen*, 532 F.2d 842, 844 (2d Cir.1976). Section 1446(b) provides, in relevant part:

If the case stated by the initial pleading is not removable,[7] *a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.*

6. Rule 24(a) states, in relevant part:
   Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

28 U.S.C. § 1446(b) (West 1973) (emphasis added).

Defendants contend that assuming *arguendo* that this court has subject matter jurisdiction over these actions, remand is authorized nonetheless because plaintiff did not timely file its petition for removal within 30 days as mandated by section 1446(b). Plaintiff responds that even if it was not timely under section 1446(b), it did not waive its right to remove because the filing of the counterclaims against it renewed that right.

Nearly all of the moving defendants rely upon *Federal Deposit Ins. Corp. v. Klayer*, 519 F.Supp. 889 (E.D.Kentucky 1981), in support of their contention that plaintiff's petition for removal was not timely filed here. In *Klayer*, the court held that the thirty-day time limit set forth in 28 U.S.C. § 1446(b):

[B]egan to run at such time as the removing party, here the plaintiff F.D.I.C., had actual notice of the state proceeding, the nature of it, the issues involved and the parties involved.

*Id.* at 893. The court's reason for adopting that rule was to insure that the Congressional intent of the earliest possible removal was, in fact, carried out. *Id.* at 892. In *Klayer*, the FDIC was actually the named plaintiff in the state court action. Therefore, the court held it had "actual notice" of all the information to determine removability when it filed the state court action; and thus the thirty day time limit began to run at that point. Consequently, because the FDIC did not petition for removal until nearly two years after the critical date, the *Klayer* court granted the motion to remand.

Likewise, in *Federal Deposit Ins. Corp. v. Generes*, 650 F.Supp. 66 (N.D.Ill.1986),

Here, the FDIC obviously has an interest in the subject matter of this lawsuit, and its interest would and could not be adequately protected by the insolvent Yankee Bank. Therefore, because the FDIC is the real party in interest, intervention is appropriate.

7. The cause of action stated in the original complaint was not removable because at that time the FDIC was not a party thereto.

the court granted defendants' motion to remand. In reaching that conclusion, the court examined the underlying purpose of the thirty day time limit on removal:

> The purpose of the 30–day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Id.* at 68 *quoting Wilson v. Intercollegiate (Big Ten) Conference Athletic Association,* 668 F.2d 962, 965 (7th Cir.1982). In *Generes,* the plaintiff FDIC had effectively delayed removal for two years, and it failed to come forth with any "compelling reason" for that delay. *Id.* Therefore, the court held:

> This Court cannot now permit FDIC to remove simply because it has become tactically advantageous to do so. That would not only be unfair to Genereses, but it would also be a complete waste of the state court's and this Court's resources.

*Id.* As an alternative basis for granting defendants' motion, the court held that the FDIC had waived its right to remove because it had "vigorously" litigated the state court action "for a full two years after it became the real party in interest." *Id.*

As plaintiff noted, both *Klayer* and *Generes* are readily distinguishable on their facts. In particular, in *Klayer,* the FDIC was already a named plaintiff in the state court action; therefore, it was in "receipt" of a copy of an amended pleading etc. as required by section 1446(b). In addition, unlike these actions, there the FDIC waited nearly two years before removal. Contrary to *Klayer,* in the present case, because the FDIC was not originally a plaintiff it was not in receipt of an amended pleading etc. until the counterclaims were served on it in February, 1988. Furthermore, even assuming actual notice on October 16, 1987, when the FDIC was appointed receiver, only four and one half months elapsed before the FDIC sought removal.

*Generes* is also readily distinguishable. In *Generes,* the FDIC "vigorously" litigated the state court action for a full two years before removing the action to federal court; whereas here the FDIC has not vigorously litigated these actions. Indeed, prior to removal, the only relief sought by the FDIC in state court was an order of substitution. Thus, in contrast to the FDIC's involvement in *Generes,* the FDIC's involvement here can only be characterized as minimal.

In addition to distinguishing those cases on their facts, the FDIC relies heavily upon *Federal Deposit Ins. v. First Mortgage Investors,* 459 F.Supp. 880 (E.D.Wis.1978). In *First Mortgage Investors,* the court denied defendant's motion to remand holding, among other things, that even if the FDIC waived its right to remove, that right was renewed when defendant filed a counterclaim against the FDIC. *Id.* at 882. Relying upon the rule enunciated therein, the FDIC contends that the 30 day time period did not start running until February 2, 1988, when HSA–I and HSA–II served counterclaims upon it. Therefore, argues the FDIC, the petition for removal filed on March 1, 1988 was timely.

Given the somewhat contradictory case law, whether the FDIC's petition for removal was timely here is a close call. While recognizing the sound policy reasons expressed in *Klayer* and *Generes,* nevertheless, the court is inclined to follow the rule enunciated in *First Mortgage Investors.* Thus, the court finds that even assuming these actions were removable at an earlier time, the FDIC's removal rights were renewed on February 2, 1988, when HSA–I and HSA–II served amended answers with counterclaims upon the FDIC. In so holding, the court is persuaded by the unique factual circumstances of these actions. Specifically, the court finds convincing the fact that the FDIC did promptly remove once HSA–I and HSA–II's amended answers with counterclaims were served upon it. Further, the FDIC did not vigorously litigate these actions in state court. In addition, contrary to defendants' asser-

tion, it does not appear to this court that the FDIC is trying to gain some perceived tactical advantage through removal. Therefore, the court concludes that the FDIC did timely file its petition for removal in these cases.

*2. Bond*

 Finally, the court notes that there is absolutely no merit to defendants' contention that these actions were improperly removed because the FDIC did not file a bond. Section 1819 (Fourth) expressly exempts the FDIC from having to post bond or security upon removal.

Accordingly, it is hereby ordered:

(1) that defendants' motion to remand these actions back to New York State Supreme Court, Onondaga County is denied.

IT IS SO ORDERED.